J. MELVIN BOYKIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 65605. Filed January 31, 1958.

*Roger V. Dickeson, Esq.*, for the petitioner.
*Nelson P. Rose, Esq.*, for the respondent.

### OPINION.

MURDOCK, *Judge:* The Commissioner determined deficiencies of $305.49 for 1954 in the income tax of the petitioner and of his wife, Laura. Laura has filed no petition with this Court which would make

her a party to these proceedings. The Commissioner also determined a deficiency of $365.65 in the petitioner's income tax for 1955. The facts are found as stipulated.

The petitioner contends that the Commissioner erred in failing to exclude from his gross income under section 119, I. R. C. 1954, the amount of the rent for his house and for his garage.

The petitioner filed a joint 1954 Federal income tax return and a separate 1955 return with the district director of internal revenue for the district of Nebraska.

The petitioner is a physician and during 1954 and 1955 was employed by the Veterans' Administration. He was a member of the medical staff of the hospital at Richmond, Virginia, as chief of professional services, for the month of January 1954. He was manager and chief of professional services at the Veterans Hospital at Lincoln, Nebraska, from February 1, 1954, to December 31, 1955.

The petitioner occupied personal living quarters during all of 1954 and 1955 on the grounds of those hospital stations. The quarters were owned and rented to the petitioner by the Veterans' Administration. The petitioner was required to live on the hospital grounds in order properly to perform the duties of his employment. He maintained no other residence in 1954 or 1955.

The petitioner's salary under his civil service grade amounted to $11,300.12 during 1954 and $12,130.38 during 1955. Those amounts constituted his full official basic salary before payroll deductions, and were the amounts reported by the Veterans' Administration on the petitioner's withholding statements (Form W-2) for 1954 and 1955.

The Veterans' Administration withheld from the petitioner's salary payments on account of his income tax for 1954 and 1955. It also withheld monthly during 1954 and 1955 rental charges for the quarters occupied by the petitioner on the hospital premises. The total amount of rent withheld was $1,147.46 for 1954 and $1,188.86 for 1955. The amount of rent charged was fixed for each facility by local appraisals of the fair and reasonable rental value of the quarters in question.

The petitioner was assigned to his quarters and the deductions therefor were made from his salary under the authority of VA Manuals MDC-7 and M4-3 which provided, *inter alia*, as follows:

[MDC-7]

4. ASSIGNMENTS: VA EMPLOYEES

\* \* \* \* \* \* \*

e. *Occupancy of Housekeeping Quarters by Station Employees*

(1) *Key Employees Required to Occupy Housekeeping Quarters.* It has been administratively determined that certain officers in hospitals and domiciliaries and in hospital and domiciliary activities at centers must be assigned to quarters and live on the station. Therefore, the following officers will be assigned to housekeeping quarters in accordance with the priority indicated below.

(a) Manager.

(b) Chief, Professional Services, or Clinical Director.

\*　　\*　　\*　　\*　　\*　　\*　　\*

The rental charge for these \* \* \* housekeeping quarters will be considered as part of the employee-occupant's compensation (salary deduction).

\*　　\*　　\*　　\*　　\*　　\*　　\*

14. METHODS OF COLLECTION

a. *Salary Deduction.* When quarters are authorized as a part of compensation (salary deduction) payment will be effected and collections made in accordance with the provisions of VA Manual M4–3.

[M4–3]

23. QUARTERS AND SUBSISTENCE

a. The VA is required to fix charges for quarters and/or subsistence which are appropriate in terms of costs incurred incident to the furnishing of such quarters and/or subsistence (act of March 5, 1928, 45 Stat. 193, 5 U. S. C. 75A). The Comptroller General has specifically ruled that the approximate cost of meals and quarters furnished to employees shall be "recovered" by the VA.

(1) All employees subsisting regularly at a VA field station are required to serve under contract of employment providing for reimbursement to the VA by means of payroll deductions. At stations where quarters and/or subsistence are furnished employees, the value thereof will be specified in the contract of employment; and the monetary equivalent will be deducted from the compensation of such employees. The copy of SF 50, Notification of Personnel Action, furnished the finance office as notice of employment sets forth, where applicable, the annual rate of deductions for quarters and/or subsistence. \* \* \*

The petitioner also made direct payments of $27.50 in 1954 and $30 in 1955 as rent for a garage on the hospital premises.

$1,174.96 for 1954 and $1,218.86 for 1955, representing the total rental charges and payments for quarters and garage, were subtracted from the total salaries in showing adjusted gross income on the returns for those years. The Commissioner, in determining the deficiencies, regarded those amounts as unallowable deductions and explained:

This amount represents the total payments that you made to your employer in order to pay him for a share of the lodging that he rented to you.

We are disallowing this deduction because you did not make these payments to your employer out of a cash allowance that you specifically received for lodging.

The parties agree that the petitioner was required, by reason of his position with the Veterans' Administration, to live in the quarters assigned to him on the hospital grounds for the convenience of his employer. The petitioner argues, therefore, that the amount withheld from his salary for the value of those quarters is to be excluded from his taxable income under section 119 of the Internal Revenue Code of 1954.

The solution of the question presented here requires some consideration of the past history of a related but somewhat different problem which arose in a situation which, for convenience, will be called type A. The facts were that A was paid a regular salary of X and, in addition, his employer furnished him without charge the use of a house having a rental value for A's purposes of Y. It was recognized that A was better off financially for having received free lodging from his employer, and the fair rental value of such free lodging was regarded as additional compensation and included in his taxable income. *Charles A. Frueauff*, 30 B. T. A. 449; *Percy M. Chandler*, 41 B. T. A. 165, aff'd. 119 F. 2d 623.

The Court of Claims, however, in *Jones* v. *United States*, 60 Ct. Cl. 552, drew a distinction between allowances and compensation to an Army officer and held that the rental value of Army quarters occupied by him rent free and cash paid him as commutation of quarters did not constitute taxable income. The Commissioner, following this decision, promulgated regulations providing that if living quarters were furnished free to an employee for the convenience of the employer their value was not to be added to his cash compensation for income tax purposes, but if the employee received both salary and living quarters as compensation for services then the fair rental value of the quarters was taxable income. See Regs. 94, art. 22 (a)-3; Regs. 111, sec. 29.22 (a)-3. See also *Arthur Benaglia*, 36 B. T. A. 838, appeal dismissed 97 F. 2d 996; *Joseph L. Doran*, 21 T. C. 374; *Charles A. Brasher*, 22 T. C. 637; *Leslie Dietz*, 25 T. C. 1255.

It is apparent that "convenience of the employer" and "compensation for services" in this connection are not mutually exclusive in that free lodging, regardless of why furnished, relieves the taxpayer of expenses which otherwise would be nondeductible family expenses under section 24 (a) (1), I. R. C. 1939, and section 262, I. R. C. 1954. It is not surprising that the problem was troublesome. One decided case was of a different type, herein referred to for convenience as type B, in which the employee was charged for his meals and lodging on his employer's premises, but no exclusion of the value of those meals and lodgings was allowed. *Herman Martin*, 44 B. T. A. 185. The present case is likewise a type B case. All of the other decided cases were of type A, involving meals or lodging, or both, furnished to the taxpayer without charge by the employer. There is no indication in the regulations prior to the 1954 Code that they refer to other than the type A situation, although the distinction between the two types is not readily apparent if the taxpayer was required to live on the employer's premises primarily for the convenience of the employer, the benefit to the employer usually being the presence of the employee at the work site for more of each 24-hour period than he would otherwise be there.

Section 119 of the Internal Revenue Code of 1954 contained the first specific provisions relating to this problem. That section is as follows:

SEC. 119. MEALS OR LODGING FURNISHED FOR THE CONVENIENCE OF THE EMPLOYER.

There shall be excluded from gross income of an employee the value of any meals or lodging furnished to him by his employer for the convenience of the employer, but only if—

(1) In the case of meals, the meals are furnished on the business premises of the employer, or

(2) In the case of lodging, the employee is required to accept such lodging on the business premises of his employer as a condition of his employment.

In determining whether meals or lodging are furnished for the convenience of the employer, the provisions of an employment contract or of a State statute fixing terms of employment shall not be determinative of whether the meals or lodging are intended as compensation.

The legislative history of section 119 gives no indication that Congress gave any thought to the exclusion from income of the value of lodgings for which the employer charged the employee the fair rental value, type B. The legislative history of section 119 indicates rather clearly that Congress was thinking only about the exclusion from income of the value of meals and lodgings furnished without charge to the employee by the employer, type A. Congressman Daniel A. Reed, Chairman of the House Ways and Means Committee, in introducing this legislation in H. R. 8300, said:

Under present law, if an employer furnishes an employee meals or lodging, the employee may have to include their value in his income even though they are furnished for the convenience of the employer if there is any evidence that they were taken into account in computing the amount of the employee's wages. The new code will remove this inequity. Under the new code the employee will not be taxed on the value of his meals or lodging if they are received at his place of business, and he is required to accept them in connection with his job.

See 100 Cong. Rec. 3423 (1954). Such language seems obviously to refer to meals and lodgings furnished by the employer to the employee without charge. Similar language is contained in H. Rept. No. 1337, 83d Cong., 2d Sess., p. 18. See also the same report, page A38, where in example 2 the use of words "free of charge" appears to make it clear that Congress was thinking only of meals and lodgings furnished free of charge. See also S. Rept. No. 1622, 83d Cong., 2d Sess., pp. 19, 190, where it is pointed out that the exclusion applies only "if the employee is required to accept the lodging * * *" and where in the second example attention is called to the fact that the meals or lodging are furnished "free of charge." See also Conference Rept. No. 2543 (to accompany H. R. 8300), 83d Cong., 2d Sess., p. 26.

Section 1.119–1 of the Income Tax Regulations was promulgated as authorized under the 1954 Code and in (c) (2) thereof it is provided that the exclusion "applies only to meals and lodging furnished

in kind, without charge or cost to the employee" and "[i]f the employee * * * is required to reimburse the employer for meals or lodging furnished in kind, the value of such meals and lodging furnished in kind is not excluded from gross income." The lodging in question was not furnished to the petitioner without charge or cost but, instead, the petitioner was charged the fair rental value of the lodgings and that amount was withheld by the employer out of the petitioner's legally established salary to reimburse the employer for the lodgings which the petitioner was thus allowed to occupy. These provisions of the regulations are reasonable under the words of section 119 and in the light of its legislative history and background in which only type A and not type B was involved. Those provisions have the force and effect of law and are directly opposed to the contention of this petitioner that exclusion was intended in a type B situation. The slight difference that the petitioner in renting the garage paid the rent directly out of his own pocket instead of having it withheld from his salary is in no way more favorable to the petitioner. No part of the items in question may be excluded from income or deducted from the basic salary which the petitioner is required to report for income tax purposes.

*Decision will be entered for the respondent.*