WILLIAM I. OLKJER AND LEORA D. OLKJER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 68410. Filed May 29, 1959.

*Herbert F. Miller, Esq.*, for the petitioners.
*Walter O. Johnson, Esq.*, for the respondent.

### OPINION.

FISHER, *Judge:* This proceeding involves deficiencies in income tax determined against petitioners for the years and in the amounts following:

| Year | Deficiency |
| --- | --- |
| 1953 | $662.00 |
| 1954 | 700.18 |
| 1955 | 279.49 |
| Total | 1,641.67 |

Petitioners have conceded all issues involved herein relating to the taxable year 1953.

The only issues presented for our consideration are whether meals and lodging were furnished petitioner for the convenience of his employer during the years 1954 and 1955, under section 119 of the Code of 1954, and, if so furnished, the value properly attributable to meals and lodging.

All of the facts are stipulated in writing and, together with exhibits, are included herein by this reference.

William I. and Leora D. Olkjer were husband and wife during the taxable years 1953 to 1955, inclusive. They filed a joint income tax return for each of these years with the director of internal revenue for the district of Colorado. William I. Olkjer, hereinafter referred to as petitioner, is a construction engineer.

Petitioner was employed as a project engineer for North Atlantic Constructors, hereinafter called the employer, a joint venture operating under a contract with the Department of the Army for the performance of certain construction at Thule, Greenland. Petitioner was employed on said job for a period of 308 days in 1954 and 76 days in 1955. During petitioner's period of employment at Thule, Greenland, he maintained a home for his family in Boulder, Colorado.

Petitioner was employed with North Atlantic Constructors under the terms of a written Off-Continent Employment Agreement which contained, *inter alia*, the following provisions:

SECTION 2. TERM OF AGREEMENT.

The term of this Agreement shall be the period during which the services of the Employee are required. No definite period of employment is assured; however, after eight (8) months continuous employment at the job site the Employee may terminate his employment hereunder by giving the Contractor written notice specifying the date on which he desires to terminate his employment, which date shall not be less than fifteen (15) days after the date of delivery of such notice to the Contractor.

\*        \*        \*        \*        \*        \*        \*

SECTION 4. OVERTIME AND HOLIDAY PAYMENTS.

(a) The Employee shall work such hours and such shifts as may be required by the Contractor. All work required by the Contractor and performed in excess of forty (40) hours per week (of the work week regularly established by the Contractor) will be paid for at one and one-half (1½) times the hourly wage rate above provided. Saturday, Sunday and holidays, as such, shall not be considered as overtime days. Sunday through Saturday shall constitute the scheduled work week of seven (7) consecutive days.

(b) In computing weekly hours for overtime purposes, hours within any work week for which the Employee receives travel time in accordance with Section 5 hereof, will not be counted as hours worked. Premium time will not be paid while Employee is in travel status.

(c) Wages for hours worked in excess of sixty (60) hours per week will accrue, but will not be paid to the Employee until he is terminated.

\*        \*        \*        \*        \*        \*        \*

SECTION 7. JOB SITE FACILITIES.

(a) Board, lodging, laundry and dry cleaning when available, social services, and such hospitalization, medical services and temporary dental care as in the opinion of the Contractor may be desirable, to keep the Employee in condition to render proper services, will be furnished by the Contractor at the job site to the extent authorized by the Contracting Officer, at a charge of Five Dollars and Seventy Five Cents ($5.75) per day. The Employee hereby authorizes the Contractor to deduct all such charges from any payments otherwise due to the Employee hereunder.

(b) The Employee agrees that no claim shall arise against the Contractor for the adequacy of job site facilities furnished hereunder, it being recognized by

the Employee that conditions at the job site are unusual; the Contractor will, to the extent of his ability, furnish the best facilities which are possible under the conditions encountered.

\*     \*     \*     \*     \*     \*     \*

SECTION 10. TERMINATION OF EMPLOYMENT.

The Employee agrees that if he quits or is terminated for cause prior to the completion of eight (8) months service hereunder, the Contractor's obligations to the Employee shall cease on the date of such quitting or termination for cause, and the Employee shall be liable for the costs and other expenses for his return to the United States. \* \* \*

\*     \*     \*     \*     \*     \*     \*

SECTION 24. CERTIFICATION BY EMPLOYEE.

The Employee certifies to the Contractor that he has read the foregoing agreement and that he fully understands its terms and conditions, and further certifies that the foregoing terms and conditions constitute his entire agreement with the Employer, and that no promises or understandings have been made other than those stated above; and it is specifically agreed by the parties hereto that this agreement shall be subject to modification only by written instrument signed by both the contractor and the employee.

Petitioner was furnished food and lodging and other facilities at the jobsite at Thule, Greenland, by the employer. Pursuant to the terms of section 7 of petitioner's employment agreement, the employer deducted, at the rate of $5.75 per day, the sum of $1,771 (on the basis of 308 days) in 1954 and $437 in 1955 (on the basis of 76 days) from petitioner's wages.

The charge of $5.75 was established by the Corps of Engineers, United States Army, as a reasonable estimate to cover the cost of meals, quarters, medical services, laundry, drycleaning, and recreation, and no distribution of this credit was effected. Any additional cost of maintaining these services over and above the credit resulting from the daily deduction was subsidized by the Federal Government.

No facilities for meals and lodging, other than those furnished by the employer, were available to petitioner at the jobsite at Thule, Greenland.

During the year 1954, petitioner received wages of $20,611.25 from the North Atlantic Constructors, before payroll deductions, from which the sum of $3,100.63 was withheld for income tax.

During the year 1955, petitioner received wages of $5,170 from said employer before payroll deductions, from which $792.10 was withheld for income tax.

On his joint returns for each of the years 1954 and 1955, petitioner reported the wages he received from the North Atlantic Constructors. From the amounts so reported, petitioner deducted the total amounts of $1,771 for the year 1954 and $437 for 1955, which had been deducted from his wages for jobsite facilities furnished to him during said years. Respondent disallowed the claimed deduction for said amounts.

Respondent contends that the meals and lodging furnished to petitioner while employed at Thule, Greenland, in 1954 and 1955 represented taxable income for services[1] rendered by petitioner to his employer, and were not furnished for the "convenience of the employer" in the sense intended by section 119, Code of 1954,[2] and, hence, were not excludible from gross income.

The parties stipulated in part as follows:

It is agreed between the petitioners and the respondent that the only question to be decided by the Tax Court is whether petitioners properly deducted on their income tax returns amounts expended by the petitioner, William I. Olkjer, for meals and lodging at Thule, Greenland, during the years 1954 and 1955, on the basis of meals and lodging furnished for the convenience of the employer under section 119, Internal Revenue Code of 1954. * * *

(Subsidiary to the foregoing, the question of the proper amounts to be attributed to the value of food and lodging as distinguished from other facilities furnished is left to the consideration of the Court and is discussed *infra.*)

In implementation of the provisions of the stipulation quoted above limiting the issue before us, respondent, on brief, states in part:

The facts of the case at bar show that the employer deducted and withheld from petitioner's wages the cost of meals and lodgings furnished to the petitioner. The Tax Court has refused to extend the benefits of section 119 to situations where, as here, an employee is required to reimburse his employer for the cost of meals and lodging furnished. *J. Melvin Boykin* (1958) 29 T.C. 813, rev'd (C.A. 8th, 1958) —F. 2d —, 2 A.F.T.R. 2d 6028; *Rodney E. Wolf, et ux.*, T.C. Memo. 1958–129 on appeal (C.A. 4th Sept. 28, 1958). In both of these cases, however, the court by-passed the convenience of the employer requirement because the parties agreed that the factual situations there involved satisfied this prerequisite, whereas, *here the point at issue is whether the meals and lodging were "furnished primarily for the convenience of the employer (and thus excludible) or whether they were primarily for the convenience of the employee (and therefore taxable)."* * * * Thus, the *instant proceeding is distinguishable in that the respondent does not urge the view expressed* in the *Boykin* and *Wolf* cases, but instead *relies exclusively* upon the fact that the meals and lodging here involved were *not* furnished for the convenience of the employer. [Emphasis supplied except citations.]

---

[1] SEC. 61. GROSS INCOME DEFINED.

(a) GENERAL DEFINITION.—Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:

(1) Compensation for services, including fees, commissions, and similar items;

[2] SEC. 119. MEALS OR LODGING FURNISHED FOR THE CONVENIENCE OF THE EMPLOYER.

There shall be excluded from gross income of an employee the value of any meals or lodging furnished to him by his employer for the convenience of the employer, but only if—

(1) in the case of meals, the meals are furnished on the business premises of the employer, or

(2) in the case of lodging, the employee is required to accept such lodging on the business premises of his employer as a condition of his employment.

In determining whether meals or lodging are furnished for the convenience of the employer, the provisions of an employment contract or of a State statute fixing terms of employment shall not be determinative of whether the meals or lodging are intended as compensation.

Consistent with the stipulation above referred to and his statement on brief, respondent subsequently (under date of May 21, 1959) issued Technical Information Release (TIR–158) in which the Revenue Service expressly announced that "it will follow the decision of the United States Court of Appeals for the Eighth Circuit in *J. Melvin Boykin* v. *Commissioner*, 260 Fed. (2d) 249," for 1954 and subsequent years.

In view of all of the foregoing circumstances, we confine our consideration of the issues before us to those emerging after giving effect to the stipulation, statement of respondent on brief, and respondent's policy information release, all above referred to.

The question of whether such meals and lodging have been furnished for the convenience of the employer is thus the only issue before us (other than the value of such meals and lodging, to be considered *infra*). No question is raised with respect to compliance with the provisions of paragraphs (1) and (2) of section 119. The issue of whether or not the meals and lodging were for the convenience of the employer, as limited and presented here, is primarily one of fact to be resolved by a consideration of all of the circumstances before us. Respondent's determination is prima facie correct, and petitioner has the burden of proof of error in such determination.

We think petitioner has effectively sustained his burden. In the first place, there were no facilities available at the jobsite for meals and lodging other than those furnished by the employer. Olkjer had no choice but to accept them. Thus, the facilities so furnished were not only for the employer's convenience, but were indispensable if any work was to be accomplished. The employment agreement shows clearly that the employer, North Atlantic Constructors, was vitally interested in keeping the "employee in condition to render proper services," and agreed, consistent with the conditions confronting it, that, among other things, board, lodging, social services, medical services, and dental care would be furnished by the contractor at the jobsite at a charge of $5.75 per day. Under the contract, the employee recognized that "conditions at the jobsite are unusual," but the contractor agreed, to the extent of its ability, to "furnish the best facilities which are possible under the conditions encountered."

The requirements as to working hours and overtime pay are set out in section 4 of the contract and are quoted *supra*. There is nothing in the record indicating that petitioner was required to be available for duty on a 24-hour basis. He was required to work "such hours and such shifts as may be required by the Contractor." There is, however, nothing in section 119 which requires 24-hour per day availability. Food and lodging were necessary in order to have

petitioner on the job at all, and in this respect were more than a mere convenience of the employer.

No doubt the facilities furnished benefitted the employee also. The test which the statute provides, however, is that of convenience to the employer. There is no provision to the effect that the employee is to be deprived of his right to exclude from gross income the value of food and lodging otherwise excludible because he, too, is convenienced.

Upon the facts, and on the basis of the foregoing discussion, we hold that the food and lodging were furnished petitioner for the convenience of the employer.

Respondent argues that section 119 authorizes only the exclusion of the value of meals and lodging. He points out that the amounts of $1,771 in 1954 and $437 in 1955 (which petitioner urges should be excluded in full) may have included not only meals and lodging, but also other facilities provided for in the contract, namely, laundry and drycleaning, social services, hospitalization, medical services, and temporary dental care. The burden of proof rests with petitioner. No specific allocation is to be found in the record. We think it apparent, however, that the value of food and lodging must have represented a substantial part of the daily charges. Applying the principles of *Cohan* v. *Commissioner*, 39 F. 2d 540 (C.A. 2, 1930), we allow petitioner the exclusion of 80 per cent of the respective amounts of $1,771 and $437 in the respective years applicable.

*Decision will be entered under Rule 50.*