Manuel G. Setal v. Commissioner. Juan Diaz v. Commissioner.
Setal v. Commissioner
Docket Nos. 78808, 79912.
United States Tax Court
T.C. Memo 1961-156; 1961 Tax Ct. Memo LEXIS 188; 20 T.C.M. (CCH) 780; T.C.M. (RIA) 61156; May 31, 1961
*188 Petitioners were employed as miners at Idria, California. Meals and lodging were furnished them by their employer at a mining camp, and a part of the cost thereof was withheld from their wages. No facilities for obtaining meals and lodging were available at or near the mine site other than those furnished by petitioners' employer. Held: Petitioners were entitled under section 119, I.R.C. 1954, to exclude from their gross incomes for 1957 the amounts withheld by their employer as part of the cost of food and lodging provided on its premises because: 1. The meals and lodging were furnished for the convenience of the employer. 2. Petitioners were required to accept the lodging so furnished as a condition of their employment. Gilbert T. Caswell, Jr., Esq., for the petitioners. Joseph D. Holmes, Jr., Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The respondent determined deficiencies in the income tax of the petitioners for 1957 as follows: Petitioner
Docket No.
Deficiency
Manuel G. Setal
78808
$198.00
Juan Diaz
79912
524.97
The only issue presented for our decision is the correctness of the respondent's action in determining that petitioners improperly excluded from their gross incomes for 1957, under section 119 of the Internal Revenue Code of 1954, amounts withheld by their employer representing part of the cost of food and lodging provided on the employer's premises. Additional issues presented by the pleadings have been disposed of by the parties on stipulation. Findings of Fact Some of the facts have been stipulated and are found accordingly. The petitioners Manuel G. Setal and Juan Diaz *190 are, and throughout the year 1957 were, employed as miners by the New Idria Mining & Chemical Company, sometimes hereinafter referred to as the company, at Idria, California. They filed their individual income tax returns for 1957 with the director at San Francisco, California. The New Idria Mining & Chemical Company is engaged in the business of mining cinnabar ore from which quicksilver is produced. The mine where petitioners were employed in 1957 is located in the community of Idria, California, which is located in the Panoche Valley in the central, westerly part of California. In connection with its mining operations the company has established a community consisting of a company-owned store, dining hall, United States Post Office, dormitories for single employees, approximately 50 houses and a house trailer site for married personnel, a grade school, a chapel, and recreational buildings. The company store, cookhouse, dormitory and other camp facilities operated at a deficit during 1957. No facilities for obtaining meals and lodging were available at or near the Idria mine other than those furnished by the company. During 1957 the company employed a crew of approximately *191 150 employees for each 12-day pay period. The working hours at the mine were divided into two 8-hour shifts: a day shift from 8 a.m. to 4 p.m. and an evening shift from 4 p.m. to 12 midnight. Several of the employees were required to be on 24-hour call; however, petitioners were not among those so employed. It was the policy of the company during 1957 to operate the mine for 12 continuous days (beginning on Monday and continuing through Friday of the second consecutive week) and then to close down its operations for 2 days. The employees were alternated every 2 weeks between the day shift and the evening shift. A few of the company employees did not utilize its living accommodations during 1957. The miners were transported into the mine by electric train. Upon arriving at a certain point within the mine they were required to walk some distance before arriving at the point where work was to commence. Approximately 30 minutes were required for the miners to arrive at the work site after entering the mine. The miners were required to work in teams of at least 2 persons and usually they worked in crews of more than 2 with each man assigned a specific responsibility such as blasting, *192 drilling, marking, timbering, or pipefitting. The miners were paid a wage based on an hourly rate of pay and computed on a portal-to-portal basis. Petitioners resided in the dormitories provided by the company for unmarried employees and ate two of their meals in the company dining hall. The third meal was in the form of a paper bag lunch which was carried underground to the job site and was eaten during the work shift within the mine. The petitioners were charged by the company 50 cents a day for their lodging and $3.00 a day for their meals. These amounts were deducted from their pay checks. Petitioners do not belong to a union and no formal employment contracts were executed by them. During 1957 they were under no express requirement to live and eat in facilities provided by the company. Ten to 20 new employees were hired by the company every 2 weeks during 1957 to replace those who failed to show up for work following the completion of a 12-day work period. The turnover in personnel was much greater among those living in the dormitories than among the married employees who occupied family dwellings. No public transportation was available during 1957 to the community of *193 Idria, California. Approximately one-half of the company's employees in 1957 owned their own automobiles. The towns of Hollister and Mendota, California, are the communities closest to Idria with housing and eating facilities available. Each of these towns is located approximately 67 miles from Idria. The roads connecting Idria with Hollister and Mendota are constructed of macadam. Substantial portions of these roads are narrow and winding, traversing mountainous terrain. During winter, road conditions make driving hazardous and difficult. During 1957 the company could not begin to operate profitably until it produced approximately 375 flasks of mercury per month. A flask consists of 76 pounds of pure mercury. The amount of mercury produced per ton of cinnabar ore varies considerably depending upon the richness of the vein from which the ore is extracted. The purpose of the company in providing meals and living accommodations at the mine site in Idria was to insure the availability of a reasonably stable and dependable labor force so as to avoid the costs incurred by interruptions in operation due to employee turnover and absenteeism. The failure of even one employee to report *194 for work adversely affected the company's operating costs. As a practical matter, petitioners were compelled to accept the lodging facilities furnished by the company in order properly to perform the duties of their employment. Opinion Under section 119 of the 1954 Code the value of meals furnished an employee by his employer is excludable from the gross income of the employee if (1) the meals were furnished for the convenience of the employer, and (2) they were furnished on the business premises of the employer. [1]Section 119 also provides for the exclusion from the gross income of an employee the value of lodging furnished him by his employer if (1) the lodging was furnished for the convenience of the employer, (2) it was furnished on the business premises of the employer, and (3) the employee was required to accept such lodging as a condition of his employment. *195 The petitioners claim that the meals and lodging furnished them by the New Idria Mining & Chemical Company during 1957 were furnished under the conditions prescribed in section 119 and that the value thereof is properly excludable from their gross incomes for that year. The respondent contends that neither the meals nor the lodging furnished petitioners by the company in 1957 were provided primarily for its convenience and, in the case of lodging, that petitioners were not required by the company to accept such living accommodations as a condition of their employment. The respondent does not contend here, as he did in J. Melvin Boykin, 29 T.C. 813, reversed 260 F. 2d 249 (C.A. 8, 1958), that section 119 has reference only to meals or lodging furnished by an employee without charge by his employer and is therefore not applicable. Unquestionably the meals and living accommodations furnished by the company here were provided for its convenience. Without such facilities it is difficult to see how the company could have maintained a labor force of sufficient stability to carry on its mining operations at all. Even with such accommodations available to its employees, *196 the company experienced a turnover in its labor force every 2 weeks varying from 6 percent to 13 percent. It appears from the record that failure on the part of even one employee to report for work according to schedule would adversely affect the cost of ore production. The nearest available living accommodations outside of Idria were located in the towns of Hollister and Mendota, approximately 67 miles distant. Under similar circumstances we have found in George I. Stone, 32 T.C. 1021, where the taxpayer was a construction equipment superintendent employed on a tunnel construction project on the Anchorage-Palmer Highway in Alaska, which was subject to adverse weather conditions, and his meals and lodging were furnished by the employer at a construction camp located approximately 40 miles from Anchorage, the nearest community, that the meals and lodging were furnished "for the convenience of the employer" within the meaning of Regulations 118, section 39.22(a)-3. On the basis of the record before us and our decision in George I. Stone, supra, which we deem to be controlling, we hold that the meals and lodging in question were furnished petitioners for the *197 convenience of their employer. See William I. Olkjer, 32 T.C. 464. The final contention of the respondent relates to the question whether the lodging furnished petitioners was accepted by them as a required condition of their employment within the meaning of section 119(2). We have been unable to discover any precedent on this point and the parties have cited none. The parties have stipulated that petitioners were under no express requirement by the company to accept the lodging furnished them. Nevertheless, it appears to us from the record that petitioners would have been unable to perform their scheduled work as miners for the company had not such facilities been provided. No lodging facilities were available at or near the company mine other than those furnished by the employer. The closest facilities were 67 miles distant. Travel during the winter months was hazardous. Petitioners were required to work two alternating shifts: first, from 8 a.m. until 4 p.m. for a period of 12 days, and then from 4 p.m. until 12 midnight for 12 days. Under such circumstances the exigencies of the situation certainly as a practical matter required the petitioners to accept the lodging *198 furnished them, even though this requirement was not expressly spelled out. To thus read the language of section 119(2) is to construe its meaning in harmony with statements contained in the respondent's regulations and a congressional committee report which interpret the phrase "required as a condition of his employment" to mean "required in order for the employee to perform properly the duties of his employment." Sec. 1.119-1(b), Income Tax Regs.; S. Rept. No. 1622, 83rd Cong. 2d Sess., p. 190 (1954). Since, without the furnishing by the company of the lodging accommodations in question, petitioners virtually would have been unable to perform their scheduled duties as miners, we are of the opinion that as a matter of necessity they were required to accept such lodging on the business premises of the employer as a condition of their employment within the meaning of section 119 of the 1954 Code. Accordingly, they are entitled under that section to exclude from their gross incomes for 1957 the amounts withheld by their employer as part of the cost of lodging facilities provided by the company. Decisions will be entered under Rule 50. Footnotes
1. SEC. 119. MEALS OR LODGING FURNISHED FOR THE CONVENIENCE OF THE EMPLOYER. There shall be excluded from gross income of an employee the value of any meals or lodging furnished to him by his employer for the convenience of the employer, but only if - (1) in the case of meals, the meals are furnished on the business premises of the employer, or (2) in the case of lodging, the employee is required to accept such lodging on the business premises of his employer as a condition of his employment. In determining whether meals or lodging are furnished for the convenience of the employer, the provisions of an employment contract or of a State statute fixing terms of employment shall not be determinative of whether the meals or lodging are intended as compensation.↩