Gordon James Duguid v. Commissioner.
Duguid v. Commissioner
Docket No. 3646-69 SC.
United States Tax Court
T.C. Memo 1971-85; 1971 Tax Ct. Memo LEXIS 248; 30 T.C.M. (CCH) 346; T.C.M. (RIA) 71085; April 26, 1971, Filed *248 Taxpayer was employed as the grounds superintendent by a country club. As part of his compensation he was provided with a house owned by the club, across the road from the golf course, and the utilities furnished thereto. Respondent determined that the value of the lodging and utilities should have been included by petitioner in his gross income for 1965 and 1966. Held: Taxpayer was not required to accept the lodging as a condition of his employment. The fair rental value of the house, including the expenses for utilities, was compensation to petitioner for services rendered and not excludable from gross income under section 119, I.R.C. 1954. Frank J. Dougherty, Jr., 1603 Kentucky Home Life Bldg., Louisville, Ky., for the petitioner. Frederick W. Krieg, for the respondent. HOYT
Memorandum Findings of Fact and Opinion HOYT, Judge: Respondent has determined deficiencies in petitioner's income tax for the years 1965 and 1966 in the amounts of $414.44 and $428.43, respectively. The only issue for our decision is whether petitioner was entitled to exclude from his gross income in 1965 and 1966 the value of lodging and utilities furnished to him by his employer under section 119, I.R.C. 1954. Findings of Fact Some of the facts have been stipulated. The stipulations and the exhibits attached thereto are incorporated herein by this reference. At the time of trial Gordon James Duguid, petitioner herein, was a resident of 347 Pinehurst, North Carolina. His residence at the time of the filing of the petition herein is not of record. [1] Petitioner's residence during the calendar years 1965 and 1966 was 6000 Dutchmans Lane, Louisville, Kentucky. During the years at issue, petitioner's wife was Josephine Duguid, who is now deceased. Petitioner *250 filed income tax returns as a surviving spouse for the years 1965 and 1966 with the district director of internal revenue for the district of Kentucky, at Louisville, Kentucky. The returns reflected that Josephine died early in 1966 before the 1965 return was filed. Many years prior to the trial of this case the Big Spring Country Club, located in Louisville, Kentucky, had a three-room residence situated on the club property which was provided *251 for the use of the grounds superintendent. This house had been built prior to the club's purchase of the property. By the time the house was about 80 years old it had fallen into such disrepair that it became necessary to tear down the building. The club did not rebuild another residence for the grounds superintendent after the demolition of the old three-room structure. Several superintendents were employed in succession by the club between the time of the demolition and the year 1959 (an undisclosed period of time). None of these superintendents lived on the club property, and the record does not disclose whether or not the club provided them with lodging. Ernest Schneider was the grounds superintendent between 1959 and the end of 1964. At some time during 1959 Schneider purchased the residence at 6000 Dutchmans Lane, Louisville, Kentucky. This residence is in the Big Spring Villiage subdivision and is one of a row of about ten houses which are directly across the street from the Big Spring Country Club. It is separated from the club property by an asphalt public road about 30 feet wide. The record does not disclose the total number of houses in the Big Spring Village subsdivision. *252 During 1965 and 1966 there were many residences within a short distance from the country club. At some time between 1959 and 1965, Schneider instituted the planting of Bermuda grass on the club's golf course, a type of grass which had not been used by the club previously. Schneider simultaneously planted Bermuda grass in his own yard at his Dutchmans Lane residence. He also made a practice green in his yard which was used by the club's caddies, the neighborhood children, and other individuals. Although the planting of a practice green in his yard provided Schneider with a convenient way of observing how the new Bermuda grass held up under play, having such a green and adjacent chipping area was not necessary in order for Schenider to perform properly his duties as grounds superintendent. Gordon James Duguid, petitioner herein, was hired in the fall of 1964 to replace Schneider as the superintendent. Some time prior to 1965, the club purchased the residence at 6000 Dutchmans Lane from Schneider. During the years 1965 and 1966 the club provided the petitioner with this residence and the utilities therefor as part of the compensation for his services to the club as grounds superintendent. *253 Petitioner lived in the house during those years. The club did not charge Duguid any rent. The fair rental value of the house in 1965 and 1966 was $1,800 for each year. The club paid the petitioner's utilities expenses during 1965 and 1966 in the amounts of $392.78 and $389.21, respectively. Petitioner's contract of employment with the Big Springs Country Club, which was effective as of January 1, 1965, read in pertinent part as follows: THIS AGREEMENT, made and entered into effective as of the 1st day of January, 1965, by and between BIG SPRING COUNTRY CLUB, of Louisville, Jefferson County, Kentucky, (a nonprofit Kentucky corporation), hereinafter referred to as "Employer", and GORDON DUGUID, 6000 Dutchmans Lane, Louisville, Jefferson County, Kentucky, hereinafter referred to as "Superintendent". WITNESSETH: WHEREAS, Employer operates and maintains an eighteen hole [sic] golf 348 course, and is desirous of maintaining said golf course and all surrounding grounds and property adjacent thereto in the best possible condition, and WHEREAS, Superintendent is a qualified expert greenskeeper and fully acquainted with proper methods of maintaining a golf course as well as *254 surrounding landscape. NOW THEREFORE, for and in consideration of the premises and the mutual covenants hereinafter contained, Employer does hereby agree to employ the services of the Superintendent upon the following terms and conditions: ITEM 1. - DUTIES OF SUPERINTENDENT 1.1 Superintendent does hereby agree to assume full and complete responsibility for the year-round maintenance and care of all grounds, plants, trees and other flora of any kind and description located on the property owned by Employer, and further to see to the maintenance and care of all parking lots and maintenance buildings located on the grounds of the Employer. 1.2 Superintendent agrees to keep in good repair all equipment needed to maintain the grounds and all adjuncts thereto, and to evaluate and recommend on a continuing basis to the Grounds Chairman and his Committee, Superintendent's recommendations as to all equipment and/or purchase of new equipment. It is specifically agreed, however, that Superintendent shall not be authorized to purchase any new equipment or machinery directly, but must receive the approval of the Grounds Committe before acquisition of same. Superintendent should also consult *255 the Grounds Committee before undertaking any substantial monetary repairs to any existing equipment unless provision for such repairs is included in the approved budget as hereinafter provided for. 1.3 Superintendent shall be directly responsible to the Chairman of the Grounds Committee in regard to all of his activities and operation under this agreement; and Superintendent shall submit to the Grounds Committee for their consideration and approval on or before September 15 of each year, a proposed budget for the ensuing year. 1.4 Superintendent shall assume the responsibility for purchases of needed materials as set forth in the approved budget or otherwise approved by the Grounds Committee, for the maintenance of the grounds and adjuncts thereto, but shall have no authority to exceed the approved budgetary figures without the approval and consent of the Grounds Committee. Superintendent shall supervise and direct all labor under his jurisdiction, and shall hire and discharge such labor, within budgetary restrictions, as he deems to be in the best interest of the Employer; in regard to all hiring and discharging of employees, Superintendent shall take no action in regard thereto *256 until he has carefully considered, independently or together with the Grounds Committee, all rules and regulations applicable to such employees under both State and Federal law. 1.5 Superintendent shall have the authority in his discretion to close the golf course as to play thereon by members and/or guests when, in his considered judgment, it is deemed necessary, and further, Superintendent hall have the authority, in his discretion, to restrict the use of golf carts whenever he deems it necessary in the best interest of the conditioning of the golf course whether due to weather or other conditions. ITEM 2 - COMPENSATION OF SUPERINTENDENT 2.1 Employer agrees to pay to the Superintendent as compensation for his services enumerated above, a salary of Eight Thousand ($8,000.00) per annum * * * 2.2 In addition to the salary stated above, Employer agrees to maintain adequate liability and other insurance coverage on the personal car of the Superintendent during the term of this agreement, and further to furnish all gasoline and oil for the operation of Superintendent's car, (which is used for performance of his duties hereunder), during the term of this agreement. 2.3 In addition *257 to the foregoing, Employer agrees to furnish to the Superintendent and his family the certain house owned by the Employer and located at 6000 Dutchmans Lane, Louisville, Jefferson County, Kentucky, and Employer agrees to pay for all utilities furnished to such house. Superintendent agrees to keep said house and its grounds clean and in good repair and to maintain it in good condition throughout the term of the agreement. * * * ITEM 3 - TERMINATION OF AGREEMENT 3.1 It is agreed and understood that either Employer or the Superintendent shall have the right to terminate this agreement without obligation or liability, by giving ninety (90) day's written notice 349 in writing by registered mail sent to the other party. It is understood and agreed by the Superintendent that if this agreement shall be terminated by himself or by the Employer that he shall vacate the house at 6000 Dutchmans Lane on or before the 90th day from the date such written notice of termination is sent by registered mail. 3.2 Unless this agreement is terminated sooner under the provisions of paragraph 3.1 above, it shall terminate automatically on December 31, 1965, and any change in the Board of Directors *258 of the Employer or the personnel of the Grounds Committee shall have no affect [sic] upon the validity of this agreement, any of its provisions or the termination date thereof. Petitioner's renewal contract of employment covering the year 1966 was identical to the above contract with the exception of a few minor changes not pertinent to the present case. Although petitioner was technically only required to work eight hours a day during the taxable years in issue, he sometimes worked longer hours. Often he would go to work as early as 5 a.m. and sometimes work as late as 10 f.m. On a few occasions he supervised the watering of the golf course until 2 a.m. following an extremely hot day. There is no evidence that petitioner was ever on 24-hour call or that any of the club's business was conducted on the property at 6000 Dutchmans Lane, and this property was used exclusively as a residence for the petitioner and his family during 1965 and 1966. Petitioner did not include in his gross income for 1965 and 1966 either the rental value of the house on Dutchmans Lane which was furnished by the club or the utilities expenses which were paid by the club during those years. In his notice *259 of deficiency for those taxable years, respondent determined that those amounts were includable in petitioner's income. Petitioner was not required to accept the lodging furnishing by his employer in order to perform his duties adequately. Opinion The only question presented for decision is whether petitioner was entitled to exclude from his gross income in 1965 and 1966 the value of lodging and utilities furnished to him by his employer, the Big Spring Country Club of Louisville, Kentucky, under section 119, I.R.C. 1954. [2]
It is clear that the lodging and utilities furnished to petitioner constituted compensation for services rendered by him to his employer and is therefore required to be included *260 in his gross income under section 61(a) unless specifically excludable under another provision of the Internal Revenue Code. M. Caratan, 52 T.C. 960 (1969), on appeal (C.A. 9, Dec. 8, 1969); see also Commissioner v. Duberstein, 363 U.S. 278 (1960), and Commissioner v. LoBue, 351 U.S. 243 (1956). Section 119 grants an exclusion for lodging furnished to an employee by his employer if three conditions are met: (1) the lodging is furnished for the convenience of the employer; (2) the lodging is on the business premises of the employer; and (3) the employee is required to accept the lodging as a condition of his employment. Section 1.119-1(b), Income Tax Regs. The failure of the petitioner to meet any one of these requirements will cause the value of the lodging and utilities to be included in his gross income. William I. Olkjer, 32 T.C. 464 (1959); Gordon S. Dole, 43 T.C. 697 (1965), affirmed per curiam 351 F. 2d 308 (C.A. 1, 1965). Respondent contends that petitioner failed to meet all three of the statutorily imposed conditions. His determination is presumptively correct and the petitioner has the burden *261 of proving error in this determination. William I. Olkjer, supra. We have concluded on the basis of the facts of record that petitioner has failed to prove that he was required to accept the lodging on Dutchmans Lane as a condition of his employment. We have interpreted the term "required" in section 119(2) to mean required in order for an employee properly to perform his duties of employment. M. Caratan, supra; see Mary B. Heyward, 36 T.C. 739 (1961), affirmed per curiam 301 F. 2d 307 (C.A. 4, 1962), citing 350 with approval section 1.119-1(b), Income Tax Regs.Section 1.119-1(b) of the regulations states in part as follows regarding this point: * * * The requirement of subparagraph (3) of this paragraph that the employee is required to accept such lodging as a condition of his employment means that he is required to accept the lodging in order to enable him properly to perform the duties of his employment. Lodging will be regarded as furnished to enable the employee properly to perform the duties of his employment when, for example, the lodging is furnished because the employee is required to be available for duty at all times or *262 because the employee could not perform the services required of him unless he is furnished such lodging. The record does not establish that any club business was conducted on the premises at 6000 Dutchmans Lane, and it appears that this property was used exclusively as a private residence. Cf. U.S. Junior Chamber of Commerce v. United States, 334 F. 2d 660 (Ct. Cl. 1964). In reaching this conclusion we have carefully considered the testimony given by Ernest Schneider, petitioner's predecessor (and successor) as grounds superintendent. At some time between 1959 and 1965, Schneider instituted the planting of Bermuda grass on the club's golf course, a type of grass which had not formerly been used by the club, and simultaneously planted and constructed a Bermuda grass practice green in his own yard at his residence at 6000 Dutchmans Lane. This practice green was used by the club's caddies, the neighborhood children, and others. Schneider testified that "a certain disease was attacking Bermuda grass" and that having his own practice green made it easy to observe how well the grass was holding up under play. We do not dispute the fact that this practice green may have *263 provided either Schneider or petitioner with a convenient method of observing the reaction of the Bermuda grass to use by golfers. However, we cannot conclude that having this small patch of grass and practice green on the Dutchmans Lane residence property was necessary so that the grounds superintendent could properly perform his duties. It seems clear that an essential part of the superintendent's duties was to inspect regularly all of the greens and fairways of the Big Spring Country Club, and that observing a small green at home was simply a nonessential addition to, and not a portion of, petitioner's duties. There is no proof that petitioner was on 24-hour call during the years in issue. In fact, the evidence shows that he was supposed to work only an eight hour day. Petitioner may in fact have worked longer than eight hours on many occasions, and sometimes even late into the night on the club's grounds, as many conscientious employees under similar circumstances would. However, we cannot conclude from this that it was necessary for petitioner to live across the street from the club in order properly to perform his duties. Schneider testified that some "emergencies" had arisen *264 while he was the grounds superintendent. As an example he stated that he once heard some boys having a drinking party over on the golf course late at night, and that he broke up the party in order to prevent possible vandalism. There is no evidence that such an event ever occurred during the petitioner's tenure as superintendent, however, or that any of the club's superintendents were ever required as part of their duties to act as night watchman. Petitioner's written contract of employment itself negates any such contention. The only other example which Schneider gave as an "emergency" was that sudden changes in the weather would require his presence at the club at unpredictable hours. It seems clear to us that it was not necessary for the superintendent to live across the street from the club in order for him to get to the club's grounds in time to water the greens during hot, dry weather or to perform whatever other duties were necessary under such conditions. The record clearly establishes that there were many other houses and apartments located only a few minutes from the club and that indeed there were other houses directly across from the club. Petitioner has not taken the *265 position that those residences would not have been available for his occupancy during the years in issue. Even if we were to assume that it was necessary for him to be immediately available in the event of an emergency, it is probable that he could have lived in one of the other residences nearby. Petitioner has failed to prove that any additional traveling time which may have been necessary by virtue of his living in some other 351 residence nearby would have hindered him in the proper performance of his duties. The mere fact that the employer has lodging available and it seems desirable that the employee occupy the premises does not satisfy the condition that the lodging be required as a condition of employment, or that the value of such "fringe benefit" be excluded from gross income. Gordon S. Dole, supra at 706; M. Caratan, supra. Since petitioner has failed to prove that he met one of the requirements imposed by section 119, i.e., that he was required to accept the lodging as a condition of his employment, we conclude and hold that the value of the lodging and utilities which were provided to him by his employer during 1965 and 1966 is includable in his gross *266 income for those years. In view of our conclusions with respect to that issue, we need not decide whether or not the house across the road was on the employer's business premises. See Wilson v. United States, 412 F. 2d 694 (C.A. 1, 1969); Gordon S. Dole, supra; Charles N. Anderson, 42 T.C. 410 (1964), reversed 371 F. 2d 59 (C.A. 6, 1966). Respondent's determination must be sustained. Decision will be entered for the respondent. Footnotes
1. In his petition filed July 15, 1969, Duguid alleged that he was a resident of Pinehurst, North Carolina. This allegation was denied by respondent in his answer. A stipulation of facts filed October 27, 1970, stated that "[the] petitioner is a resident of Pinehurst, North Carolina" (emphasis supplied), and did not indicate his residence at the time the petitioner was filed. On brief respondent maintained that Duguid's residence at the time the petitioner was filed had not been established by the record. With the exception of his statement in the petition, petitioner did not address himself to this point, and there is no evidence in the record before us that establishes petitioner's residence when his petition was filed with this Court.↩
2. All statutory references are to the Internal Revenue Code of 1954. SEC. 119. MEALS OR LODGING FURNISHED FOR THE CONVENIENCE OF THE EMPLOYER. There shall be excluded from gross income of an employee the value of any meals or lodging furnished to him by his employer for the convenience of the employer, but only if - * * * (2) in the case of lodging, the employee is required to accept such lodging on the business premises of his employer as a condition of his employment.↩