HARRY Z. BORNSTEIN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bornstein v. Commissioner
Docket Nos. 7337-73, 4701-76, 9834-76.
United States Tax Court
T.C. Memo 1978-278; 1978 Tax Ct. Memo LEXIS 232; 37 T.C.M. (CCH) 1186; T.C.M. (RIA) 78278; July 25, 1978, Filed Harry Z. Bornstein, pro se. Arthur H. Boelter, for the respondent. DAWSON
MEMORANDUM OPINION DAWSON, Judge: In these consolidated cases respondent determined the following deficiencies in petitioner's Federal income taxes: Year
Deficiency
1971
$ 834.47
1973
2,375.00
1974
908.00
Petitioner has conceded respondent's adjustments with respect *233 to certain unreimbursed business expenses for the taxable years 1971 and 1973. The key issue for decision is whether the petitioner is entitled to exclude from his gross income under section 119[1] additional rent paid by his employer for his living quarters in Tokyo, Japan, during the years in issue. The parties have not executed a stipulation of facts, but they agree as to certain material facts. Since the petitioner indicated he was unable to return from Japan, he and respondent were permitted to submit the case for decision on facts which for the most part are undisputed. The pertinent facts, as we see them, are summarized below. Harry Z. Bornstein (petitioner) is a United States citizen who resided in Tokyo, Japan, when he filed his petitions in these cases. He timely filed his Federal income tax returns for the years 1971, 1973, and 1974 with the Director of International Operations for the Internal Revenue Service. Wage and Tax Statements (Treasury Form W-2) prepared by his employer, Associated Metals and Minerals Corporation (AMMC) were submitted *234 with petitioner's returns. During the years 1971 and 1973 and for 6 months during 1974 the petitioner, a Far East represntative for AMMC, lived in one of two apartments leased by Asoma Corporation (ASOMA), a subsidiary of AMMC, in Tokyo. ASOMA subleased the apartment to petitioner to meet "the special needs of expatriate personnel." Although petitioner's views regarding living quarters were considered, the final choice of premises was made by the management of ASOMA to fit the particular requirements and needs of petitioner. In his situation the following factors, as set forth in a letter dated January 18, 1978, from ASOMA, were considered: A) To be of a Western standard about equal to that which a person in Mr. Bornstein's position would occupy in the USA. B) To be suiable for entertainment of business associates, customers and visitors both from Japan and abroad. C) To be within reasonable distance from our Tokyo office. D) To be located within easy access to Tokyo airport. (In Mr. Bornstein's case, due to his frequent and continuous trips abroad plus his duties to receive and entertain the many foreign visitors which his activities produced.) Mr. Bornstein's responsibilities *235 covered - in addition to his activities within Japan- also:- So. Korea, Taiwan, Okinawa, Hong Kong, Philippines, So. Viet-Nam, Thailand, Laos, Cambodia, Malaysia, Singapore, Burma, Ceylon and Indonesia. E) To satisfy local standards of "Status" dictated by the position Mr. Bornstein occupied and the needs of "Representation" of our principals and their needs for local image and prestige. The procedure followed by ASOMA in leasing apartments for use by "expatriate personnel," such as petitioner, was due primarily to "the special business conditions and practices peculiar to Japan." Petitioner paid ASOMA a rental fixed by ASOMA in accordance with guidelines and calculations established by the Japanese tax authorities. Petitioner paid rent in the amount of 12,000 yen per month. The total rents paid by petitioner for subleasing the apartment during the years in issue were as follows: Year
Yen
Dollars
1971
144,000
411.96
1973
144,000
528.00
1974 (6 months)
72,000
246.00
The total amounts paid as rent by ASOMA for leasing the apartment, in excess of the reimbursement it received from the petitioner, for the years in issue were as follows: Year
Yen
Dollars
1971
864,000
2,471.00
1973
1,572,000
5,779.41
1974 (6 months)
786,000
2,691.78
*236 AMMC, through ASOMA, treated the additional rents it paid for the apartment as its expense and did not include the total amount each year as part of petitioner's gross income on the W-2 statements. The apartment occupied by petitioner during the years in issue was not physically located at the place of business of either ASOMA or AMMC. Petitioner's employer, AMMC, deemed it necessary for him to occupy an apartment of such standard. In his notices of deficiencies the respondent determined that the additional rents paid by the employer are includable in petitioner's gross income. Gross income, as defined in section 61(a) of the Code, means all income from whatever source derived. Thus, it includes income realized in any form, i.e., money, property, or services. It is clear, even on this limited record, that the company-leased apartment in Tokyo, the rental of which was mostly paid for by petitioner's employer, was provided to him because of his employment relationship with AMMC. Consequently, the amounts of the rental payments made by the employer in excess of the modest sums paid by petitioner are includable in his gross income for the years in controversy unless specifically *237 excludable under another provision of the Internal Revenue Code. Commissioner v. Duberstein,363 U.S. 278 (1960); Commissioner v. LoBue,351 U.S. 243 (1956); Dole v. Commissioner,43 T.C. 697 (1965), affd. per curiam 351 F. 2d 308 (1st Cir. 1965). Petitioner maintains that the rents paid by AMMC, or its subsidiary ASOMA, over and above the amounts paid by petitioner during 1971, 1973, and part of 1974 are excludable from his gross income under the provisions of section 119. [2]
In order to qualify for the section *238 119 exclusion, three conditions must be met: (1) The employee must be required to accept the lodging as a condition of his employment; (2) the lodging must be furnished for the convenience of the employer; and (3) the lodging must be on the business premises of the employer. Section 1.119-1(b), Income Tax Regs. The failure of petitioner to meet any one of these conditions will cause the "value" of the lodging to be includable in his gross income. Olkjer v. Commissioner,32 T.C. 464 (1959).It is respondent's position that the petitioner has failed to meet all three conditions. Regardless of whether the claimed exclusion from gross income can be denied on this record for failure to meet the first and second conditions, we think no such exclusion is available to petitioner because the Tokyo apartment was not "on the business premises" of the employer, as required by section 119. The legislative history of section 119 insofar as it bears on the issue presented here was discussed in our opinion in Lindeman v. Commissioner,60 T.C. 609, 613-614 (1973), as follows: The requirement of section 119 that, to be excludable *239 from gross income, lodging must be furnished and accepted "on the business premises" of the employer was first adopted as part of the 1954 Code. As passed by the House of Representatives, the section used the term "place of employment" rather than "business premises." H. Rept. No. 1337, to accompany H.R. 8300 (Pub. L. No. 591), 83d Cong., 2d Sess., pp. 18, A39 (1954).The Senate changed the term to "business premises," but the accompanying report explained that "Under both bills meals and lodging are to be excluded from the employee's income if they are furnished at the place of employment and the employee is required to meet certain other conditions." S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. No. 591), 83d Cong., 2d Sess., pp. 19, 190-191 (1954). The Senate version was adopted with the following explanation in Conf. Rept. No. 2543, 83d Cong., 2d Sess., p. 27 (1954): The term "business premises of the employer" is intended, in general, to have the same effect as the term "place of employment" in the House bill. For example, lodging furnished in the home to a domestic servant would be considered lodging furnished on the business premises of the employer. Similarly, meals *240 furnished to a cowhand while herding his employer's cattle on leased lands, or on national forest lands used under a permit, would also be regarded as furnished on the business premises of the employer. * * * As in the case of other exclusions from gross income, this one is subject to abuse, and the statutory language must be construed with this thought in mind. Accordingly, the term "on" in relation to the employer's business premises does not mean "in the vicinity of" or "nearby" or "close to" or "contiguous to" or similar language, but is to be read literally. Commissioner v. Anderson,supra at 67. If the lodging is furnished at a location some distance from the place where the employee works, the lodging is not furnished on his employer's business premises. The issue as to the extent or the boundaries of the business premises in each case is a factual one. To resolve the question consideration must be given to the employee's duties as well as the nature of the employer's business. The section 119 exclusion applies where the lodging is furnished at a place *241 where the employee performs a significant portion of his duties or on the premises where the employer conducts a significant portion of his business. Commissioner v. Anderson,371 F. 2d 59, 67 (6th Cir. 1966). Or, in the words of this Court in Dole v. Commissioner,43 T.C. at 707 "the phrase should be construed to mean either (1) living quarters that constitute an integral part of the business property or (2) premises on which the company carries on some of its business activities." Lindeman v. Commissioner,supra at 615. There is nothing contained in this record establishing that the petitioner performed a significant portion of his duties, whatever they may have been, at the Tokyo apartment. And the record is devoid of any evidence showing that AMMC conducted a significant portion of its business in the apartment. Petitioner has the burden of proof and he has failed to carry that burden. Rule 142(a), Tax Court Rules of Practice and Procedure.
It is plain that Congress used the term "on the business premises" in the normal sense as referring to the actual conduct of the employer's business and not in some esoteric *242 sense relating to the purpose for which the property was held. The phrase should not be given any "strained or eccentric interpretation" that will frustrate what Congress obviously attempted to achieve. Dole v. Commissioner,supra at 708 (concurring opinion of Judge Raum). In our judgment the disposition of the narrow issue confronting us in this case is controlled by our recent opinion in McDonald v. Commissioner,66 T.C. 223, 230-231 (1976). In that case the taxpayer and his wife were also United States citizens who had been transferred to Tokyo, Japan. The taxpayer was employed by Gulf Oil Company-Asia as its vice president. Gulf had a longstanding policy of providing living accomodations for its employees who were not Japanese citizens. Its practice was to lease a number of apartments or houses in the Tokyo area and maintain such premises for assignment to its expatriate employees. Gulf required the housing accomodations to be of "Western-Type," safe, in close proximity to the business office of Gulf and equipped with telephone communication for overseas calls. Its policy was intended to facilitate employee relocation and to mitigate *243 any potential distractions from the employees' efficiency in performance. The rent and utilities for the premises occupied by the taxpayer were paid by Gulf. It in turn charged the taxpayer a token rent. The lessors in question were not related to either Gulf or to the taxpayer.The residence was used to entertain guests occasionally. In addition, the taxpayer used the telephone in his residence to place overseas business related telephone calls which he could not do during the regular business hours because of the time difference. On these facts we held that the taxpayer was not entitled to the section 119 exclusion. With respect to the "business premises" condition we said (66 T.C. at 231): As indicated in our findings, supra, the only business activities conducted by petitioner James H. McDonald in his residence were the occasional entertainment of business guests and the periodic use of the telephone to place or receive business calls not conveniently handled during regular business hours in Tokyo. While incident to both the performance of petitioner's particular responsibilities and the general conduct of the business of Pacific Gulf Oil, Ltd., the entertainment *244 and telephone activities do not constitute the requisite quantum or quality of activities to qualify as the "significant portion" prescribed by both alternative constructions of "on the business premises." Petitioner's reliance on Adams v. United States, 77-2 USTC par. 9613, 40 AFTR 2d 77-5607 (Ct. Cl. 1977), is misplaced. That case is clearly distinguishable on its facts. There the residence was designed, in part, to accommodate the business activities of the employer, Mobile Sekiyu. In addition, there were many business activities for Mr. Adams to perform in his home after regular working hours because of the extensive nature of the employer's business. Mr. Adams did in fact perform substantial business activities in the residence, which served an important business function of the employer. Accordingly, we hold in the circumstances of this case that the petitioner is required to include in his gross income the amounts of $ 2,471 for 1971, $ 5,779.41 for 1973, and $ 2,691.78 for 1974, which figures represent the costs paid by AMMC in each year, reduced by the sum of the rent paid by petitioner in each year. McDonald v. Commissioner,supra at 234-235. *245 Petitioner urges us to rule on some "broader issues," namely, (1) that respondent's alleged actions or delays have violated the principle of "due process"; (2) that respondent has come into Court with "unclean hands" because of the exemption granted under section 912 for certain cost-of-living allowances to Internal Revenue Service employees stationed outside the continental United States; (3) that the provisions of section 912 are unconstitutional; and (4) that respondent has violated Article 7-1 of the U.S.A./Japan Tax Treaty. We find that all of the arguments advanced by petitioner on these questions lack merit in the context of this case, and we therefore reject them summarily. To reflect our conclusions herein, Decisions will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue.↩
2. SEC. 119. MEALS OR LODGING FURNISHED FOR THE CONVENIENCE OF THE EMPLOYER. There shall be excluded from gross income of an employee the value of any meals or lodging furnished to him by his employer for the convenience of the employer, but only if-- * * *
(2) in the case of lodging, the employee is required to accept such lodging on the business premises of his employer as a condition of his employment.↩