ARTHUR BENAGLIA AND ELISE BENAGLIA, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 87638.   Promulgated November 5, 1937.

*Livingston Jenks, Esq.*, for the petitioners.
*Arthur H. Fast, Esq.*, and *Henry L. Young, Esq.*, for respondent.

OPINION.

STERNHAGEN: The Commissioner has added $7,845 each year to the petitioner's gross income as "compensation received from Hawaiian Hotels, Ltd.", holding that this is "the fair market value of rooms and meals furnished by the employer." In the deficiency notice he cites article 52 [53], Regulations 77, and holds inapplicable *Jones* v. *United States*, 60 Ct. Cls. 552; I. T. 2232; G. C. M. 14710; and G. C. M. 14836. The deficiency notice seems to hold that the rooms and meals were not in fact supplied "merely as a convenience to the hotels" of the employer.

From the evidence, there remains no room for doubt that the petitioner's residence at the hotel was not by way of compensation for his services, not for his personal convenience, comfort or pleasure, but solely because he could not otherwise perform the services required of him. The evidence of both the employer and employee shows in detail what petitioner's duties were and why his residence in the hotel was necessary. His duty was continuous and required his presence at a moment's call. He had a lifelong experience in hotel management and operation in the United States, Canada, and elsewhere, and testified that the functions of the manager could not

have been performed by one living outside the hotel, especially a resort hotel such as this. The demands and requirements of guests are numerous, various, and unpredictable, and affect the meals, the rooms, the entertainment, and everything else about the hotel. The manager must be alert to all these things day and night. He would not consider undertaking the job and the owners of the hotel would not consider employing a manager unless he lived there. This was implicit throughout his employment, and when his compensation was changed from time to time no mention was ever made of it. Both took it for granted. The corporation's books carried no accounting for the petitioner's meals, rooms, or service.

Under such circumstances, the value of meals and lodging is not income to the employee, even though it may relieve him of an expense which he would otherwise bear. In *Jones* v. *United States, supra,* the subject was fully considered in determining that neither the value of quarters nor the amount received as commutation of quarters by an Army officer is included within his taxable income. There is also a full discussion in the English case of *Tennant* v. *Smith,* H. L. (1892) App. Cas. 150, III British Tax Cases 158.[2] A bank employee was required to live in quarters located in the bank building, and it was held that the value of such lodging was not taxable income. The advantage to him was merely an incident of the performance of his duty, but its character for tax purposes was controlled by the dominant fact that the occupation of the premises was imposed upon him for the convenience of the employer. The Bureau of Internal Revenue has almost consistently applied the same doctrine in its published rulings.[3]

The three cases cited by the respondent, *Ralph Kitchen,* 11 B. T. A. 855; *Charles A. Frueauff,* 30 B. T. A. 449; and *Fontaine Fox,* 30 B. T. A. 451, are distinguishable entirely upon the ground that what the taxpayer received was not shown to be primarily for the need or convenience of the employer. Of course, as in the *Kitchen* case, it can not be said as a categorical proposition of law that, where an employee is fed and lodged by his employer, no part of the value of such perquisite is income. If the Commissioner finds that it was received as compensation and holds it to be taxable income, the taxpayer contesting this before the Board must prove by evidence that it is not income. In the *Kitchen* case the Board held that the evidence did not establish that the food and lodging

---

[2] This decision has only been cited in the later English reports on another point, and seems therefore to be still good law.

[3] O. D. 265, 1 C. B. 71; O. D. 814, 4 C. B. 84; O. D. 915, 4 C. B. 85; I. T. 2232, IV–2 C. B. 144; I. T. 2253, V–1 C. B. 32; G. C. M. 12300, XII–2 C. B. 30; G. C. M. 14710, XIV–1 C. B. 44; G. C. M. 14836, XIV–1 C. B. 45; G. C. M. 18430, XVI C. B. 22–8733: Cf. O. D. 1135, 5 C. B. 174; I. T. 3022, XV–2 C. B. 76.

were given for the convenience of the employer. In the present case the evidence clearly establishes that fact, and it has been so found.

The determination of the Commissioner on the point in issue is reversed.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

MURDOCK concurs only in the result.

———

ARNOLD, dissenting: I disagree with the conclusions of fact that the suite of rooms and meals furnished petitioner and his wife at the Royal Hawaiian Hotel were entirely for the convenience of the employer and that the cash salary was fixed without reference thereto and was never regarded as part of his compensation.

Petitioner was employed by a hotel corporation operating two resort hotels in Honolulu—the Royal Hawaiian, containing 357 guest bed rooms, and the Moana, containing 261 guest bed rooms, and the bungalows and cottages in connection with the Moana containing 127 guest bed rooms, and the Waialae Golf Club. His employment was as general manager of both hotels and the golf club.

His original employment was in 1925, and in accepting the employment he wrote a letter to the party representing the employer, with whom he conducted the negotiations for employment, under date of September 10, 1925, in which he says:

Confirming our meeting here today, it is understood that I will assume the position of general manager of both the Royal Waikiki Beach Hotel (now under construction) and the Moana Hotel in Honolulu, at a yearly salary of $10,000.00, payable monthly, together with living quarters, meals, etc., for myself and wife. In addition I am to receive $20.00 per day while travelling, this however, not to include any railroad or steamship fares, and I to submit vouchers monthly covering all such expenses.

While the cash salary was adjusted from time to time by agreement of the parties, depending on the amount of business done, it appears that the question of living quarters, meals, etc., was not given further consideration and was not thereafter changed. Petitioner and his wife have always occupied living quarters in the Royal Hawaiian Hotel and received their meals from the time he first accepted the employment down through the years before us. His wife performed no services for the hotel company.

This letter, in my opinion, constitutes the basic contract of employment and clearly shows that the living quarters, meals, etc., furnished petitioner and his wife were understood and intended to be compensation in addition to the cash salary paid him. Being compensation to petitioner in addition to the cash salary paid him,

it follows that the reasonable value thereof to petitioner is taxable income. Cf. *Ralph Kitchen*, 11 B. T. A. 855; *Charles A. Frueauff*, 30 B. T. A. 449.

Conceding that petitioner was required to live at the hotel and that his living there was solely for the convenience of the employer, it does not follow that he was not benefited thereby to the extent of what such accommodations were reasonably worth to him. His employment was a matter of private contract. He was careful to specify in his letter accepting the employment that he was to be furnished with living quarters, meals, etc., for himself and wife, together with the cash salary, as compensation for his employment. Living quarters and meals are necessities which he would otherwise have had to procure at his own expense. His contract of employment relieved him to that extent. He has been enriched to the extent of what they are reasonably worth.

The majority opinion is based on the finding that petitioner's residence at the hotel was solely for the convenience of the employer and, therefore, not income. While it is no doubt convenient to have the manager reside in the hotel, I do not think the question here is one of convenience or of benefit to the employer. What the tax law is concerned with is whether or not petitioner was financially benefited by having living quarters furnished to himself and wife. He may have preferred to live elsewhere, but we are dealing with the financial aspect of petitioner's relation to his employer, not his preference. He says it would cost him $3,600 per year to live elsewhere.

It would seem that if his occupancy of quarters at the Royal Hawaiian was necessary and solely for the benefit of the employer, occupancy of premises at the Moana would be just as essential so far as the management of the Moana was concerned. He did not have living quarters or meals for himself and wife at the Moana and he was general manager of both and both were in operation during the years before us. Furthermore, it appears that petitioner was absent from Honolulu from March 24 to June 8 and from August 19 to November 2 in 1933, and from April 8 to May 24 and from September 3 to November 1 in 1934—about 5 months in 1933 and 3½ months in 1934. Whether he was away on official business or not we do not know. During his absence both hotels continued in operation. The $20 per day travel allowance in his letter of acceptance indicates his duties were not confined to managing the hotels in Honolulu, and the entire letter indicates he was to receive maintenance, whether in Honolulu or elsewhere, in addition to his cash salary.

At most the arrangement as to living quarters and meals was of mutual benefit, and to the extent it benefited petitioner it was compensation in addition to his cash salary, and taxable to him as income.

The Court of Claims in the case of *Jones* v. *United States*, relied on in the majority opinion, was dealing with a governmental organization regulated by military law where the compensation was fixed by law and not subject to private contract. The English case of *Tennant* v. *Smith*, involved the employment of a watchman or custodian for a bank whose presence at the bank was at all times a matter of necessity demanded by the employer as a condition of the employment.

The facts in both these cases are so at variance with the facts in this case that they are not controlling in my opinion.

SMITH, TURNER, and HARRON agree with this dissent.