Lloyd N. Farnham v. Commissioner.
Farnham v. Commissioner
Docket No. 11229.
United States Tax Court
1947 Tax Ct. Memo LEXIS 81; 6 T.C.M. (CCH) 1049; T.C.M. (RIA) 47260; September 30, 1947
Charles E. Prieve, Esq., for the petitioner. William Schwerdtfeger, Esq., for the respondent. HARLAN Memorandum Findings of Fact and Opinion HARLAN, Judge: Respondent determined a deficiency in petitioner's income tax for 1943 in the amount of $125.43. In deciding the correctness of this deficiency we are presented with a question of law as to whether or not petitioner, for the years 1942 and 1943, was entitled to an exclusion from his income of the value of living quarters occupied by him in an apartment building while he was serving as a janitor in said building. Findings of Fact Petitioner is an individual residing at 621 North 14th Street, Milwaukee, Wisconsin. His income tax returns for 1942 and 1943 were filed with the *82 collector of internal revenue for the district of Wisconsin. During the taxable years petitioner was hired by Dick & Reuteman Co. of Milwaukee as a janitor in one of the buildings operated by that company for the owner. Petitioner's employer operated many other properties in Milwaukee, for various owners. Petitioner and his wife were both licensed janitors. The apartment which they occupied was near the entrance of the building served by the petitioner. The established rental of this apartment was $40 per month and the apartment was used by petitioner and his wife for accepting deliveries to tenants and for collecting rents. Petitioner's duties also required visits by him to other buildings supervised by Dick & Reuteman Co., at which time petitioner's wife would serve in his absence. Petitioner's duties were to clean the buildings, fire the boilers and do all the repairs that were possible for a janitor to make, and be on duty continuously in case of emergency. He was responsible for the health, welfare and care of the tenants to the extent of his capacity as a janitor. He also collected the rents and took in packages from merchants, special delivery letters and notices *83 for tenants who were not home, supervised the laundries, the allotment of hours of washing, and took care of the lawns and generally serviced the buildings and was available at all times or had someone there available. Petitioner's duties required that either he or a substitute procured by him be on the premises at all times, twenty-four hours a day. He was required to have a telephone in his apartment so that he could be reached at any hour of the day or night. In 1937 a number of so-called sit-down strikes developed in various industries and petitioner's employer, in an effort to protect itself from the possibility of a janitor occupying the janitor's quarters and refusing to render any service, in November of that year adopted a new system of compensation for its janitors. Prior to that time petitioner's employer had been paying its janitors a stipulated compensation and furnishing the janitor's apartment in addition thereto. In November 1937 petitioner's employer adopted the system of adding the rental value of the apartment to the compensation check and then requiring the janitor to endorse the check at the office of payment immediately upon receipt, deliver the check back to *84 the employer and receive the same cash payment that had been received prior thereto. The employer gave strict instructions to its janitors that the checks must be endorsed and redelivered immediately upon receipt and the taxpayer complied with these instructions throughout the taxable years. This system was in operation from 1937 to 1945. On the above facts the occupation of the apartment by the janitor was a necessary part of his employment and it was for the benefit of his employer. Opinion This case turns upon an interpretation of Commissioner's Regulations pertaining to section 22, I.R.C., which sets forth the items which shall be included in gross income. Regulations 111, section 29.22(a)-3 includes the following: "* * * If a person receives as compensation for services rendered a salary and in addition thereto living quarters and meals, the value to such person of the quarters and meals so furnished constitutes income subject to tax. If, however, living quarters or meals are furnished to employees for the convenience of the employer, the value thereof need not be computed and added to the compensation otherwise received by the employees. * * *" *85 The decisions as to the factual situations under which the rental value of living quarters shall be excluded from income are not always easy to reconcile as it is difficult in many cases to determine when the occupation of the premises is mainly, if not purely, a personal benefit to the taxpayer and when it is for the partial benefit of the employer if not wholly so. For example, in the case of Herman Martin, 44 B.T.A. 185, the taxpayer was a bachelor employed as a radio operator on a dredge being operated by the United States Government. He received what was designated as a "base pay" of $2,100 per year from which the Government deducted $40 per month for lodging and meals while he was serving on the dredge. When he was on leave, however, the Government made no such deductions. The taxpayer had no regular residence of his own. Under these circumstances this court held that inasmuch as board and lodging were personal needs of the taxpayer, paid for by him through deductions after he had received his "base pay", the item of board and lodging could not be deducted by him from his taxable income, and could not be considered as traveling expenses incurred while away from *86 home in pursuit of trade or business. The court says: "The petitioner was required to receive his subsistence and occupy quarters on board ship by the exigencies of the situation but the meals and lodging furnished to petitioner were obviously not considered or treated by him or his employer as an allowance or gratuity." The main element of distinction between the Martin case and the case at bar is that in the case at bar there were no meals supplied and the taxpayer in the case at bar did not receive a different salary while on and off duty. In the pending case the taxpayer's duty was to be at his apartment, or to have a substitute there, twenty-four hours a day each day of his employment. He was at liberty to eat where or what he pleased provided he was always available at his apartment for service. The fact that he and his wife received some personal benefit from the occupation of the premises does not preclude the taxpayer's right to exclude the rental value thereof from his net taxable income. See Olin O. Ellis, 6 T.C. 138, where, under circumstances somewhat similar to the case at bar except that in that case the court found that the taxpayer received promises *87 as manager of an apartment of greater value than the benefit to the employer warranted, the court included only a part of the rental value of said premises in the taxable income. The Ellis case, Arthur Benaglia, 36 B.T.A. 838, and the case at bar are to be easily distinguished from cases where the employee, because of the nature of his employment, expends money for personal needs of a higher amount than he would otherwise do if it were not for his employment. In such cases we find Lewis Drill, 8 T.C. 902, where the employee, because of working overtime, ate his evening meal near his place of employment instead of returning to his home. See also the case of Sparkman v. Commissioner, 112 Fed. (2d) 774, where an actor purchased two very expensive sets of false teeth to enhance his professional performance. In both of the latter cases the court quite properly held that such expenditures were primarily, if not exclusively, for the personal benefit of the taxpayer. The change of the method of paying petitioner herein in November 1937 could at most be considered nothing more than a subterfuge. It was not intended to change the duties or responsibilities *88 of the taxpayer or the amount of compensation paid to him. It was merely to place the employer in a better position in the event of a sit-down strike. It would seem to be very questionable whether this subterfuge accomplished anything at all because the reality of the transaction would certainly control and not the fiction of handing a check out and requiring it to be immediately returned after endorsement. The Commissioner's brief, in discussing the effect of this subterfuge, says: "In an eviction suit it is doubtful that the landlord-tenant relationship could have been established." We agree with that statement and conclude that there is no reality to the cash payment by the tenant of rent for the apartment as there was actual payment by Martin for his board and lodging in the Martin case, supra. Neither do we give any effect to the contention of the Commissioner that the taxpayer in both 1942 and 1943 "deducted" $480 from his income rather than attempting to "exclude" the same. His 1943 income tax return was apparently prepared by the taxpayer alone and the 1942 return was prepared with the assistance of one A. J. Weihl. Who this individual was or whether he was an employee *89 of the Revenue Department is not in the record, but the mistake of calling an exclusion a deduction we do not consider as committing the taxpayer to any particular status. Decision will be entered for the petitioner.