GEORGE I. STONE AND MYRTLE V. STONE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 66682. Filed July 31, 1959.

*D. Deane Ferguson, Esq.,* for the petitioners.
*John L. Ridenour III, Esq.,* for the respondent.

OPINION.

PIERCE, *Judge:* Respondent determined a deficiency in the income tax of petitioners for the year 1953, in the amount of $1,387.34.

The sole issue for decision is whether the amount of $3,549, which the Commissioner has included in the petitioners' income as the value of board and room furnished by their employer at a construction camp in Alaska, should be excluded from income as "living quarters or meals * * * furnished to employees for the convenience of the employer," within the meaning of Regulations 118, section 39.22(a)–3, relating to the Internal Revenue Code of 1939.

All the facts have been stipulated; and the stipulation of facts, together with the exhibits attached thereto, is hereby adopted as our findings of fact. These facts may be summarized as follows.

The petitioners, George I. and Myrtle V. Stone, are husband and wife. They filed a joint income tax return for the year 1953 here involved, with the director of internal revenue at Tacoma, Washington.

In December 1951, petitioners were employed by a group of contractors which was engaged in constructing a tunnel on the Anchorage-

Palmer Highway in Alaska, to work as supervisory employees in connection with that project. The tunnel project was located about 40 miles from Anchorage; and the work thereon was conducted on an around-the-clock basis, 7 days per week. Due to the relative inaccessibility of the tunnel project and the prevailing weather conditions, the contractors found it necessary to establish a camp at the tunnel site where all their employees, including those working in a supervisory capacity, could be furnished with board and room.

The petitioners were continuously employed at said project throughout the years 1952 and 1953. George served as equipment superintendent for the project; and although his normal period of duty was about 8 hours per day, he was also subject to call as needed during his off-hours. Myrtle, the wife, was the stewardess in charge of the camp dining room and commissary, which operated on a 24-hour per day basis. Her normal period of duty was from 8 to 11 hours per day. Both petitioners lived in the camp; and although there was no express requirement that employees live there, no other accommodations were available, and as a practical matter petitioners were compelled to accept the quarters furnished by their employer in order to carry on their supervisory duties.

The petitioners had no written contract of employment with the contractors; but it has been stipulated that in the case of George, he received a salary and bonus for his services, and in addition was furnished with his board and lodging; and that in the case of Myrtle, she received a salary for her services, and in addition she too was furnished her board and lodging.

The contractors, under the accounting method which they employed, made a book entry charge to the account of all supervisory, engineering, and administrative employees, including petitioners, of $40.25 per week for board and lodging, and then each week entered a counter-credit of equal amount to each such account. Thereafter, the employee was paid only the amount of his or her salary, or salary and bonus. Also for Federal income tax purposes, it was the practice of the contractors to withhold income taxes in respect of each of the petitioners, in amounts computed with reference not only to salary or salary and bonus, but also with reference to the amounts initially credited to the petitioners' accounts for board and room as above described; and then to prepare information reports for the Internal Revenue Service (Form W–2) on the same basis.

The petitioners, on their 1953 joint income tax return, first reported the full amount so shown on the W–2 information returns of the contractors; then, in order to arrive at their adjusted gross income, subtracted from such gross amount, board and room credits totaling $3,549; and claimed adjustment for the amount so subtracted, as "[e]xpense away from home (for convenience of employer)."

The respondent, in his notice of deficiency, disallowed said latter adjustment with the following explanation: "Inasmuch as you have failed to prove that the above expenses were incurred *away from your post of duty* in performance of service as an employee, the claim for the deduction is determined to be unallowable." (Emphasis supplied.) Respondent, however, made no determination, either one way or another, as to whether said amounts were excludible from income, as "living quarters or meals * * * furnished to employees for the convenience of the employer," within the meaning of Treasury Regulations 118, section 39.22(a)-3.

The petitioners, in the instant proceeding, have conceded that said amounts are not allowable as "away from home expenses." Rather, they are here contending only that said amounts are excludible from their income as camp living quarters and meals furnished "for the convenience of the employer."

In deciding the present issue, it should be observed in the first place that, prior to the enactment of section 119 of the Internal Revenue Code of 1954, there was no provision either in the 1939 Code or in any of the preceding revenue acts, respecting living quarters and meals furnished to employees for the convenience of an employer. Rather, under both the 1939 Code and all of these earlier statutes, the matter was covered by Treasury regulations. Thus, Treasury Regulations 118 which relates to income taxes under the 1939 Code, for the year 1952 and the year 1953 here involved, provides in section 39.22(a)-3 thereof:

If a person receives as compensation for services rendered a salary and in addition thereto living quarters or meals, the value to such person of the quarters and meals so furnished constitutes income subject to tax. *If, however, living quarters or meals are furnished to employees for the convenience of the employer, the value thereof need not be computed and added to the compensation otherwise received by the employees.* * * * [Emphasis supplied.]

Similar provisions have been included in the Treasury regulations for all revenue acts since the 1918 Act. For example, article 33 of Regulations 45 (Revenue Act of 1918) provides in part: "When living quarters such as camps are furnished to employees for the convenience of the employer, the ratable value need not be added to the cash compensation of the employee, * * *." To the same effect see: Regs. 62, art. 33 (Revenue Act of 1921); Regs. 65, art. 33 (Revenue Act of 1924); Regs. 69, art. 33 (Revenue Act of 1926); Regs. 74, art. 53 (Revenue Act of 1928); Regs. 77, art. 53 (Revenue Act of 1932); Regs. 86, art. 22(a)-3 (Revenue Act of 1934); Regs. 94, art. 22(a)-3 (Revenue Act of 1936); Regs. 101, art. 22(a)-3 (Revenue Act of 1938); Regs. 103, sec. 19.22(a)-3 (1939 Code—applicable to years 1939, 1940, and 1941); and Regs. 111, sec. 29.23(a)-3 (1939 Code—applicable to years 1942 through 1951).

At the time of the enactment of the 1939 Code and of all the above-mentioned revenue acts, the position of the Bureau of Internal Revenue with respect to living accommodations furnished to employees for the convenience of the employer, was as shown in the above-quoted provision of Regulations 45. The Supreme Court has held that, "Treasury regulations and interpretations long continued without substantial change, applying to unamended or substantially reenacted statutes, are deemed to have received Congressional approval and have the effect of law." *Helvering* v. *Winmill*, 305 U.S. 79, 83.

Subsequently in 1940, the above-mentioned provisions of Regulations 103, 101, 94, 86, and 74 were all amended by Treasury Decision 4965 (1940-1 C.B. 13), so as to recast these provisions in the language which appears in Regulations 118, above quoted. And about 3 weeks thereafter, an explanation of such amendments was issued by the Commissioner (Mim. 5023, 1940-1 C.B. 14), which stated in part as follows:

3. As a general rule, the test of "convenience of the employer" is satisfied if living quarters or meals are furnished to an employee who is required to accept such quarters and meals in order to perform properly his duties. For example, if an employee is subject to immediate service at any time during the 24 hours of the day and, therefore, can not obtain quarters or meals elsewhere without material interference with his duties and on that account is required by the employer to accept quarters or meals furnished by the employer, the value thereof need not be included in the gross income of the employee. (See O.D. 915, C.B. 4, 85 (1921).)

About 10 years later in 1950, the Commissioner issued another ruling (Mim. 6472, 1950-1 C.B. 15), in which the above-mentioned Mim. 5023 was modified "to the extent * * * [it implies] that the 'convenience of the employer' rule is applicable to situations in which it is *otherwise evident* that living quarters or meals are furnished to an employee as compensation for services rendered." (Emphasis supplied.) However, neither the controlling statute nor the applicable regulations was amended.

Considering now the instant case, this Court has recently held that whether meals and lodging have been furnished "for the convenience of the employer," is primarily a question of fact to be resolved from a consideration of all the surrounding facts and circumstances. *William I. Olkjer*, 32 T.C. 464. Here, the petitioners were employed on a tunnel construction project which was located in Alaska, about 40 miles from Anchorage, and which was operated on an around-the-clock basis, 7 days per week. Due to the relative inaccessibility of this project and the prevailing weather conditions, the contractors had found it necessary to establish a camp at the tunnel site, wherein they could provide lodging and meals for their employees. The petitioners resided in such camp; and although there was no express requirement that they do so, no other accommodations

were available, so that as a practical matter they were in effect compelled to accept the camp quarters and meals which their employer furnished, in order to perform their supervisory duties in connection with the around-the-clock operation. No doubt they, as well as the employers, were convenienced by the camp facilities; but this is true in all cases where desirable working facilities as well as living quarters are concededly furnished "for the convenience of the employer"; and the controlling Treasury regulations contain no provision to the effect that an employee is to be deprived of his right to exclude from gross income the value of food and lodging otherwise excludible, because he too is convenienced. Cf. *William I. Olkjer, supra.*

The respondent appears not to have disputed seriously that the camp lodging and meals were furnished by the contractors to their employees, as a necessary means for carrying on their project; for in his brief he said: "In the instant case the exigencies were such that it was not practicable for petitioners to take their meals and lodging elsewhere (there apparently were no such facilities nearby and the weather conditions often made it impossible to travel any substantial distance)." Rather respondent's position on brief is that, "whether or not board and lodging was furnished for the convenience of the employer," these were compensatory to the petitioners and therefore includible in their incomes. But such statement, as before suggested, could similarly be made with respect to all desirable working facilities or conveniences furnished by an employer as a means for providing more suitable working conditions. The present issue is not to be decided, as respondent suggests, on the basis of how the contractors kept their books, or of what may have prompted them to keep their books in the way they did. Bookkeeping entries even of a taxpayer himself, though of some evidentiary value, are not conclusive and decision must rest on the actual facts. *Doyle* v. *Mitchell Bros. Co.*, 247 U.S. 179. And this is even more true where the entries are made by parties, over whom the taxpayer has no control. It is common knowledge that contractors on public projects often are required by public agencies or the other contracting parties to maintain their accounts in a particular manner; but this does not control the computation of the income for Federal income tax purposes, either of the contractors or of their employees.

Nor do we see any significance in the method of income tax withholding adopted by the contractors, which would be binding on the present petitioners. The contractors may well, in an abundance of caution, have withheld too much tax in order to safeguard themselves against any possible charge or penalty for failure to perform their duties in a field where the position of the Internal Revenue Service might appear to be uncertain. Also, such exercise of precaution could do no harm to the employees, for if the withholdings were excessive,

suitable adjustments could be claimed by the employees on their returns, as actually was done in the instant case. Certainly, the action of the contractors in this regard is counterbalanced by the fact that the petitioners themselves did not treat the board and lodging as part of their compensation; for, in computing their compensation on their returns, they excluded the value of the camp lodging and meals which the contractors furnished.

We hold, on the basis of all the facts and surrounding circumstances disclosed by the present record, that the camp lodging and meals here involved were furnished to petitioners by the contractors "for the convenience of the employer," within the meaning of the applicable Treasury regulations; that the value thereof was not compensation to them; and that the petitioners are entitled to exclude from their gross income for the year involved, the amount which they did exclude on their return for said year, in reporting the amount of their adjusted gross income.

*Decision will be entered for the petitioners.*