CHARLES N. ANDERSON AND GRACE M. ANDERSON, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4710–62. Filed May 20, 1964.

*Richard J. Brentlinger* and *Ray G. Brown*, for the petitioner.
*John J. Larkin*, for the respondent.

SCOTT, *Judge:* Respondent determined deficiencies in petitioners' income tax for the calendar years 1958, 1959, and 1960 in the amounts of $1,379.20, $1,534.01, and $1,742.52, respectively.

The issue for decision is whether the value of lodging, utilities, laundry, and cleaning furnished to petitioners by Charles N. Ander-

son's employer and amounts paid by his employer in reimbursement for groceries purchased for consumption by petitioners' family and for milk delivered to petitioners' family are includable in petitioner's income for each of the years here involved.

### FINDINGS OF FACT

Petitioners, husband and wife residing in Columbus, Ohio, filed joint income tax returns for the calendar years 1958, 1959, and 1960, the 1958 return being filed with the district director at Columbus, Ohio, and the 1959 and 1960 returns with the district director at Cincinnati, Ohio.

Charles N. Anderson (hereinafter referred to as petitioner) was employed during each of the taxable years 1958, 1959, and 1960 as manager of Lincoln Lodge, a motel located on West Broad Street in Columbus, Ohio. Lincoln Lodge is owned by Nationwide Development Co., an Ohio corporation, and is leased by that corporation to Lincoln Lodge Corp., an Ohio corporation, for a term of 20 years commencing in 1956. Nationwide Development Co. constructed Lincoln Lodge, and it was completed and opened to the public on July 1, 1956.

Lincoln Lodge is a part of the Alsonett Hotel and Motel chain which has been operating for approximately 20 years and by which petitioner had been employed for about 6 years when he came to Lincoln Lodge shortly before it opened on July 1, 1956.

At the time Lincoln Lodge was opened for operation on July 1, 1956, petitioner with his wife and three children occupied rooms 74 and 75 in the lodge, a two-room combination living room and bedroom suite with kitchen facilities. Petitioner and his family continued to occupy these quarters until July 1957.

Petitioner's wife was unhappy with the crowded condition of living in two rooms with three children, and petitioner brought the situation to the attention of C. H. Alberding, the president of the Alsonett Hotel chain. Petitioner had plans for cutting a door in one of the two rooms and adding two more rooms to the quarters which he and his family occupied.

The rental value, on a transient basis, of the two rooms occupied by petitioner and his family was approximately $600 per month.

From the time it was opened, Lincoln Lodge had operated from 80 to 85 percent of capacity and on many days had been filled to capacity. Because of the revenue loss to the motel for the rooms already occupied by petitioner's family, Alberding decided to move petitioner out of the motel into a house which he planned to have Lincoln Lodge obtain as close as possible to the motel. Alberding did not consider building a house on the motel premises but in late 1956 undertook, in the company of petitioner and a representative of

Nationwide Development Co., the developers of Lincoln Village and owner of the motel and property surrounding it, to find and purchase a house as close as possible to Lincoln Lodge. When no house which was a satisfactory distance from the lodge and otherwise satisfactory to Alberding was found, Alberding chose a lot in Lincoln Village as close as available to the lodge, on which to construct a house to be occupied by the family of the manager of the lodge. The property was located approximately 2 short blocks from the Lincoln Lodge facilities and was the closest property to the facilities zoned for single residence, any closer property being either specially reserved, zoned for other than residential, or otherwise unavailable. Title to the property was taken in the name of petitioners in order to obtain the least possible interest rate, and, therefore, the least possible cost to Lincoln Lodge Corp.

The property was located at 191 Schoolhouse Lane, and the type of house to be constructed thereon was decided by the developer of Lincoln Village in which the property was located, in accordance with the master plans for the development of Lincoln Village. In accordance with this plan a five-room, one-story house was constructed on the lot, and upon completion of the house in approximately July of 1957 petitioner and his family moved into it. All payments including the downpayment on the unimproved lot and the house and all of the mortgage payments were made by Lincoln Lodge Corp. On June 24, 1959, petitioners transferred ownership of the premises to Lincoln Lodge Corp. The house is approximately a 4-minute walk or 2-minute drive from the main lobby of Lincoln Lodge.

Petitioner as manager of Lincoln Lodge was required by Lincoln Lodge Corp., as a condition of his employment, to live in the house at 191 Schoolhouse Lane. Petitioner as manager of Lincoln Lodge was required to be available on a 24-hour-a-day basis in order to oversee reservations made by and to handle complaints of guests, as well as to supervise the sale of food and beverages, and to handle any complaints in connection with the service in the restaurant.

The fair rental value of the house at 191 Schoolhouse Lane was $160 per month during each of the years here involved.

Cleaning services and laundry of towels and bed linens were furnished to petitioner at 191 Schoolhouse Lane by employees of Lincoln Lodge Motel on the same basis as they had been furnished to petitioner when he and his family occupied rooms 74 and 75 at the lodge. The value of such services furnished to petitioner was $600 per year.

The cost of utilities at 191 Schoolhouse Lane while it was occupied by petitioner and his family was paid for by Lincoln Lodge Corp. and the fair value of the utilities so furnished to petitioner was $600 per year.

During the years 1958, 1959, and 1960 petitioner's wife purchased the groceries consumed by petitioner and his family at supermarkets or grocery stores. She retained the receipts or tickets showing the amounts paid for such groceries, and petitioner took these receipts and turned them in together with an expense account voucher to Lincoln Lodge Corp. and received reimbursement for the amount expended for groceries. During the years 1958, 1959, and 1960 petitioner had milk for his family delivered by Bordens Dairy to 191 Schoolhouse Lane and payment for this milk was made by Lincoln Lodge Corp. Occasionally petitioner took some staple groceries from the motel's kitchen for use by his family at 191 Schoolhouse Lane. The total value of the milk paid for by Lincoln Lodge Corp., the groceries for which petitioner was reimbursed by Lincoln Lodge Corp., and the groceries taken from the motel's kitchen was $1,800 during each of the years 1958, 1959, and 1960.

Petitioner ate a number of his meals in the motel dining room when it was necessary for him to be in the dining room during mealtime, and on some occasions his family ate meals in the motel dining room. On a few occasions when petitioner was entertaining someone in connection with the business of Lincoln Lodge Corp. at 191 Schoolhouse Lane, meals prepared in the motel's kitchen by the motel staff were sent to 191 Schoolhouse Lane for use in such entertainment. The meals at which petitioner and his family consumed the groceries and milk for which payment was made by Lincoln Lodge Corp. or reimbursement made to petitioner were not prepared by the motel staff.

On their tax returns for the years 1958, 1959, and 1960, petitioners did not include any amount for the fair rental value of the house at 191 Schoolhouse Lane or the value of the utilities, laundry and cleaning services, and milk furnished by Lincoln Lodge Corp. to petitioner and did not include any part of the amounts received by petitioner as reimbursement for amounts expended for groceries.

Respondent in his notice of deficiency for each of these years increased petitioner's income by $3,000 explained as representing the fair rental value of the residence and by the amount of $3,120 explained as representing the value of utilities, milk, groceries, laundry and dry cleaning, and an item of $120 not here in issue. Respondent explained these adjustments in each of the years as follows:

(a) It is held that your use of the residence owned by Lincoln Lodge Corporation had a fair rental value of $3,000.00 which is includible in your income under the provisions of section 61 of the Internal Revenue Code of 1954.

(b) It is held that Lincoln Lodge Corporation paid for your personal expenses in the amount of $3,120.00. Accordingly, it is held that such payments are to be included in your income under the provisions of section 61 of the Internal Revenue Code of 1954. * * *

OPINION

Section 119 of the Internal Revenue Code of 1954 [1] provides that there shall be excluded from the gross income of an employee the value of any meals and lodging furnished to him by his employer for the convenience of the employer if the meals are furnished on the business premises of the employer and the employee is required to accept lodging on the business premises of his employer as a condition of his employment.

Respondent's regulations provide that the question of whether meals are furnished for the convenience of the employer is one of fact to be determined by an analysis of all the facts and circumstances in each case [2] and provide that the term "business premises" of the employer "generally means the place of employment of the employee." [3] These regulations also provide that the exclusion applies

---

[1] All references are to the Internal Revenue Code of 1954 unless otherwise indicated.
SEC. 119. MEALS OR LODGING FURNISHED FOR THE CONVENIENCE OF THE EMPLOYER.
There shall be excluded from gross income of an employee the value of any meals or lodging furnished to him by his employer for the convenience of the employer, but only if—
  (1) in the case of meals, the meals are furnished on the business premises of the employer, or
  (2) in the case of lodging, the employee is required to accept such lodging on the business premises of his employer as a condition of his employment.
In determining whether meals or lodging are furnished for the convenience of the employer, the provisions of an employment contract or of a State statute fixing terms of employment shall not be determinative of whether the meals or lodging are intended as compensation.

[2] Sec. 1.119-1(a)(2), Income Tax Regs.
The question of whether meals are furnished for the convenience of the employer is one of fact to be determined by analysis of all the facts and circumstances in each case. Ordinarily, meals furnished to the employee during the working day will be deemed furnished for the convenience of the employer. Likewise, meals furnished immediately preceding or immediately following working hours of the employee will be deemed to be for the convenience of the employer if the furnishing of such meals serves a business purpose of the employer other than providing additional or indirect compensation to the employee. Meals furnished on nonworking days, or at times when the employee's presence on the employer's business premises does not serve a business purpose of the employer, do not qualify for the exclusion. If the employee is required to occupy living quarters on the business premises of his employer as a condition of his employment (as defined in paragraph (b) of this section), the exclusion applies to the value of any meals furnished to the employee on such premises. There is no requirement that the employee accept such meals as a condition of employment to qualify for the exclusion.

[3] Sec. 1.119-1(c)(1), Income Tax Regs.
For purposes of this section, the term "business premises of the employer" generally means the place of employment of the employee. For example, meals and lodging furnished in the employer's home to a domestic servant would constitute meals and lodging furnished on the business premises of the employer. Similarly, meals furnished to cowhands while herding their employer's cattle on leased land would be regarded as furnished on the business premises of the employer.
  (2) The exclusion provided by section 119 applies only to meals and lodging furnished in kind, without charge or cost to the employee. If the employee has an option to receive additional compensation in lieu of meals or lodging in kind, or is required to reimburse the employer for meals or lodging furnished in kind, the value of such meals and lodging is not excluded from gross income. However, the mere fact that an employee, at his option, may decline to accept meals and lodging tendered in kind will not of itself require inclusion of the value thereof in gross income. Cash allowances for meals or lodging received by an employee are includible in gross income to the extent that such allowances constitute compensation.

only to meals and lodging furnished in kind without charge or cost to the employee.

It is petitioner's position that the house at 191 Schoolhouse Lane was on the business premises of his employer, Lincoln Lodge Corp., within the meaning of section 119. Petitioner contends that the evidence shows that the lodgings were furnished to him by his employer for the convenience of the employer and that he was required to accept the lodgings as a condition of his employment.

Respondent's primary position is that the lodgings furnished to petitioner were not on the business premises of the employer within the meaning of section 119. Respondent makes some argument that petitioner has failed to establish that the meals and lodgings were furnished for the convenience of the employer.

The evidence shows that the lodgings were furnished to petitioner for the convenience of his employer in order that petitioner might be as close as possible to the motel to be on call 24-hours per day but without occupying valuable space in a motel that was rented to a high degree of capacity and on many days rented to capacity. The evidence also shows that petitioner was required to accept this lodging within a few minutes walk of the motel and only two short blocks away as a condition of his employment.

The remaining question with respect to the lodgings is whether or not 191 Schoolhouse Lane was on the business premises of Lincoln Lodge Corp. within the meaning of section 119. Although title to this property was taken in petitioner's name, it is clear that the property was owned by Lincoln Lodge Corp., and respondent does not contend otherwise. It is also clear that the property was purchased by Lincoln Lodge Corp. as a residence for the manager of Lincoln Lodge, to be used for that purpose as a part of the business operation of Lincoln Lodge Motel. The property was purchased to increase the earnings of Lincoln Lodge by increasing the rooms available for use as guestrooms by the motel. Since the motel was often filled to capacity an increase in the rooms available to be used as rental guestrooms, not only increased the motel's earnings by the $250 to $300 per month receipts from each room rental, but also from the increased sales of food and beverages that often accompanied room rentals. It is, therefore, clear that the property was procured by Lincoln Lodge Corp. for a business purpose. The decision to purchase this property was made after petitioner approached the president of Lincoln Lodge Corp. requesting more room in the motel for his family. The decision was made by petitioner's employer to purchase the house for the manager for the purpose of satisfying the manager's desire for larger quarters, while at the same time increasing the motel's revenue not only because of not decreasing the rental facilities by two additional rooms, but because the two rooms already being used brought in

monthly more revenue than the fair rental value of the house at 191 Schoolhouse Lane. The property at 191 Schoolhouse Lane was business property of Lincoln Lodge Corp., and in this meaning of the term "business premises" was a part of the "business premises" of petitioner's employer. The president of Lincoln Lodge testified that he considered the property at 191 Schoolhouse Lane as a part of the business premises of Lincoln Lodge.

Respondent's regulations state that "the term 'business premises,' generally means the place of employment of the employee." By use of the word "generally" respondent apparently recognizes that under certain circumstances the place of employment might be separated somewhat from the living quarters. No case on this point has come to our attention. In both *William I. Olkjer*, 32 T.C. 464 (1959), and *George I. Stone*, 32 T.C. 1021 (1959), the taxpayers involved lived in quarters "at the job site" of the employer. The employer in *William I. Olkjer, supra*, was engaged in construction work at Thule, Greenland, and in the *George I. Stone* case, the employer was engaged in constructing a tunnel on the Anchorage-Palmer Highway in Alaska. Neither case involved the question of whether the meals and lodgings furnished to the taxpayers there involved were "on the business premises" of the employer but in both cases the issue was whether or not the meals and lodgings were furnished for the convenience of the employer. In the *Olkjer* case the nature of the facilities furnished other than that they were "at the job site" is not shown, but in *George I. Stone, supra*, the facts show that the facilities were furnished in a camp established at the tunnel site where employees could be furnished with room and board. It would appear that in neither of these cases could the facilities furnished have been actually on the properties on which the construction work was being done which would have been the place of employment, in the narrowest sense of the word, of the taxpayers there involved but rather were furnished at the site, or expressed another way, it might be said close proximity to or vicinity of the area where the construction work was being done.

In *Arthur Benaglia*, 36 B.T.A. 838 (1937), we held that meals and lodgings furnished to a manager of two hotels, certain bungalows, and a golf club at one of the hotels were furnished for the convenience of the employer and therefore not includable in the taxpayer's income. The applicable revenue act involved in *Arthur Benaglia, supra*, had no provision comparable to section 119 of the Internal Revenue Code of 1954 but a regulation of the Commissioner provided for exclusion from income of meals and lodging furnished for the convenience of the employer. (See *George I. Stone, supra* at 1023 and 1024, for a discussion of the provisions of the Treasury regulations prior to the enactment of section 119 of the Internal Revenue Code of 1954.) The primary change made by section 119 of the Internal Revenue Code of

1954 as compared with the provisions previously contained in the regulations was that under section 119 the amounts are excluded from gross income even though under an employment agreement the meals and lodging may be furnished as compensation to the employee. See H. Rept. No. 1337 to accompany H.R. 8300, 83d Cong., 2d Sess., pp. A38 and A39, and S. Rept. No. 1622 to accompany H.R. 8300, 83d Cong., 2d Sess., pp. 190 and 191.[4]

In *Mary B. Heyward*, 36 T.C. 739 (1961), affirmed per curiam 301 F. 2d 307 (C.A. 4, 1962), in discussing the provisions of section 119, we stated at page 743 :

> While respondent makes a brief argument that the two houses were not on the *business* premises of Winnsboro Granite, that is, at the quarry site, we think the issue under section 119 must be decided on whether the lodging was furnished for the convenience of the employer with the employee being required to accept it as a condition of his employment.

In that case we did not discuss the meaning of the term, "business premises" under section 119, since the conclusion reached was that the lodging was not furnished for the convenience of the employer. In our view, to conclude that property owned by an employer within two short blocks of a facility being managed by an employee who is required to be available on 24-hour call for management of the employer's business, is not on the business premises of the employer within the meaning of section 119, where the employee is required to accept such lodgings for the convenience of the employer, is too restrictive an interpretation. We, therefore, hold that the lodgings furnished to petitioner were furnished to him by his employer for the convenience of the employer and that petitioner was required to accept such lodgings on the business premises of his employer as a condition of his employment.

In our view the lodgings furnished include the utilities and cleaning and we therefore hold that respondent was in error in including

---

[4] S. Rept. No. 1622 to accompany H.R. 8300, 83d Cong., 2d Sess., pp. 190 and 191, states : This section corresponds to section 119 of the bill as passed by the House. Existing law, as currently interpreted by the Internal Revenue Services and certain court decisions, requires that if meals or lodging represent compensation the value thereof must be included in gross income even though the employee must accept such meals or lodging in order properly to perform his duties. Under section 119 of the bill as passed by the House if meals or lodging are (1) furnished at the place of employment, and (2) are required to be accepted by the employee at the place of employment as a condition of the employment, the value thereof is excludable from the employee's gross income. Under section 119 as amended by your committee, there is excluded from the gross income of an employee the value of meals or lodging furnished to him for the convenience of his employer whether or not such meals or lodging are furnished as compensation. In the case of meals the exclusion is permitted only if the meals are furnished on the business premises of the employer. In the case of lodging the exclusion is permitted only if the employee is required to accept the lodging on the business premises of the employer as a condition of his employment. The phrase "required as a condition of his employment" means required in order for the employee to properly perform the duties of his employment.

Section 119 applies only to meals or lodging furnished in kind. Therefore, any cash allowances for meals or lodging received by an employee will continue to be includible in gross income to the extent that such allowances constitute compensation.

the fair rental value of the house at 191 Schoolhouse Lane and the value of the cleaning of and utilities used in such house in petitioners' income for each of the years here involved.

Having concluded that 191 Schoolhouse Lane was a part of the business premises of petitioner's employer, it follows that any meals furnished to petitioner on those premises were furnished on the business premises of the employer. Respondent does not argue that the milk and groceries furnished were not meals within the meaning of section 119 but does contend that petitioner has failed to prove that these meals were furnished on the business premises for the convenience of the employer. In this connection it might be noted that respondent has not included in petitioner's income the value of the actual meals taken by petitioner and his family in the dining room of the motel nor of the prepared meals sent by the motel to 191 Schoolhouse Lane. Ordinarily, when lodging is furnished to a taxpayer on the business premises of the employer and prepared meals are furnished on those same premises, it would follow that if the lodging is furnished for the convenience of the employer, the meals would be so furnished since the same necessity for the lodging being furnished would apply to the meals. This is recognized by respondent in his regulations which provide, "If the employee is required to occupy living quarters on the business premises of his employer as a condition of his employment * * * the exclusion applies to the value of any meals furnished to the employee on such premises."

In the instant case petitioner's wife bought most of the groceries at a supermarket or grocery store and petitioner was reimbursed for her expenditures. If these groceries are considered to be "meals" furnished, then it is questionable whether such "meals" were furnished "on the business premises" of the employer. We need not decide this question since we have concluded that for another reason, the amount received by petitioner as reimbursement for amounts expended by his wife for groceries is not excludable from petitioner's income.

Respondent's regulations provide:

The exclusion provided by section 119 applies only to meals and lodging furnished in kind, without charge or cost to the employee. If the employee has an option to receive additional compensation in lieu of meals or lodging in kind, * * * the value of such meals and lodging is not excluded from gross income. * * * Cash allowances for meals or lodgings received by an employee are includible in gross income to the extent that such allowances constitute compensation.

This provision of the regulations is substantially the same as a statement appearing in the committee reports, H. Rept. No. 1337, *supra*, and S. Rept. No. 1622, *supra*.

In the instant case, where petitioner's wife purchased groceries and petitioner was reimbursed for the cost by the motel, in effect petitioner

has been furnished a cash allowance for such groceries, and therefore the amount is includable in petitioner's income to the extent that it constitutes compensation. Petitioner has made no showing that the reimbursement for groceries does not constitute compensation.

Respondent's regulations which provide that cash allowances for meals are not excludable under section 119 to the extent that such allowances constitute compensation are reasonable. These regulations are in accordance with the statements in the committee reports and the statutory provision for exclusion of "meals" furnished. The milk used by petitioner's family was furnished to petitioner by the motel in kind and a small amount of groceries was so furnished from the motel's kitchen. The record does not divide the $1,800 value of the milk and groceries between the small amount of groceries from the motel's kitchen and the milk paid for directly by the motel and furnished to petitioner and the money received by petitioner in reimbursement for amounts his wife spent for groceries. However, on the basis of the record which shows that all of petitioner's family, which in 1958 included four children and by 1960 five children, drank milk, we hold that the value of the groceries for which petitioner was reimbursed in cash was $1,500 and that this amount of cash reimbursement is includable in petitioner's income.

Petitioner has not shown that the reimbursement for groceries did not constitute compensation. The amount was not furnished in kind and is not excludable within the meaning of section 119. We hold that the amount of $300 representing the value of milk and the few staples furnished from the motel's kitchen was for meals furnished to petitioner on the business premises of his employer for the convenience of the employer and is excludable from petitioner's income. Cf. *Olin O. Ellis*, 6 T.C. 138 (1946).

*Decision will be entered under Rule 50.*