ALBERT M. VAN HUFF AND JUDITH A. VAN HUFF, [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Van Huff v. Commissioner
Docket No. 8911-79.
United States Tax Court
T.C. Memo 1981-30; 1981 Tax Ct. Memo LEXIS 714; 41 T.C.M. (CCH) 764; T.C.M. (RIA) 81030; January 27, 1981. *714 Held: Lodging furnished to petitioner while he was employed as an equipment engineer on the Alaska pipeline project was not on the business premises of the employer. Accordingly, the value of the lodging is not excludable from gross income under section 119. Albert M. Van Huff, pro se. Michael McMahon, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: Respondent determined the following deficiencies in petitioners' Federal income taxes: 1976
$ 3,339
1977
2,504
Due to concessions, the sole issue remaining for our determination is whether the value of lodging facilities *715 furnished to petitioner Albert M. Van Huff is properly excludable from petitioners' gross income [2] under section 119. [3]
FINDINGS OF FACT Some of the facts have been stipulated and are so found. These facts together with the exhibits attached thereto are incorporated herein by this reference. Petitioners Albert M. Van Huff and Judith A. Van Huff, husband and wife, were residents of Anchorage, Alaska at the time they filed their petition herein. Federal income tax returns for 1976 and 1977 were filed by petitioners with the Internal Revenue Service Center, Ogden, Utah. During the years in issue, petitioner Albert M. Van Huff (hereinafter petitioner) was employed as a senior rotating equipment engineer by Alyeska Pipeline Service Company (hereinafter *716 Alyeska). Alyeska, as agent for major oil companies, undertook management of the construction of a Trans-Alaska pipeline which was to span an 800 mile distance running from the point of a major oil discovery in Prodhoe Bay to Valdez, Alaska. Construction on the pipeline commenced in 1967 but environmental considerations halted its progress in 1968. After the Arab Oil Embargo of 1973 construction of the Trans-Alaska pipeline was continued. The southern terminal of the pipeline was located at Valdez, Alaska and Alyeska sought to employ qualified engineers for that site. It was in March of 1976 that petitioner gained employment with Alyeska. Prior to construction of the pipeline, Valdez, Alaska was a town with a population of approximately 1,000 whose industry included mainly fishing. With the development of the pipeline at hand, Alyeska faced a serious shortage of adequate housing for its employees. Therefore, Alyeska evolved a housing plan to accommodate its employees in the Valdez area. Alyeska built 30 permanent type houses and erected 170 modular-type houses in the area. It also leased all the available motel rooms in Valdez for employee use. Consequently, the city *717 of Valdez experienced tremendous economic growth along with an increase in its population. Upon petitioner's acceptance of employment with Alyeska, he was informed by the company as to where his living quarters in Valdez would be. Petitioner did not inquire about other accommodations as he was sure that his employment was contingent upon acceptance of Alyeska's housing policy. Moreover, the scarcity of housing and sewer and electrical facilities coupled with the severity of snow conditions made it impractical for petitioner to haul a trailer through Valdez on an independent search for housing. The lack of adequate housing in highlighted by the fact that petitioner's employment commencement date was delayed until the house he was to occupy was completed. The basic geographical structure of the Alyeska operation in the Valdez area was as follows: 1. The Valdez pipeline terminal was located south of Port Valdez Bay. This was the southern terminal of the entire Trans-Alaska pipeline. 2. There were at least one-half dozen personnel locations most of which were located either north or northeast of the terminal site. Those locations north of the site were situated north of *718 Port Valdez Bay directly across the Bay from the terminal site. It was in this northern region that petitioner's residence was located. The northeast region, known as Sheep Creek Camp was some 23 miles from the city of Valdez. 3. There were several warehousing and other storage equipment areas. First, a housing area warehouse was located within the northern residential subdivision. Second, there were numerous dock warehouses, laydown areas and rail and pipe yards located on the northern shore of Port Valdez Bay, all of which were used to supply the construction site. These storage areas were situated either directly south of petitioner's residential region or somewhat to its eastern side. 4. There were barge offloading areas where necessary supplies were delivered. Several such sites were situated on the northern shore of the Bay and one offloading area was maintained on the southern shore contiguous to the Valdez terminal site. 5. Alyeska employed the services of numerous trucking companies throughout the Valdez area for ground transportation and sought some of its supplies from local vendors. As noted, the pipeline terminal site at Valdez was located on the southern *719 side of Port Valdez Bay. The erection of family housing in the terminal area was implausible due to the mountainous terrain which surrounded the limited area of leveled terrain upon which the terminal was built. Petitioner's chief employment responsibility was the inspection of numerous pieces of rotating equipment including compressors, pumps, turbines and mixers, which were installed at the terminal. The performance of this duty took place at the terminal. Some of those who worked on the pipeline were also responsible for the proper administration of the areas in which construction employees resided. Such administration duties included: 1. the receipt of modular homes; 2. dealing with insurance claims arising from damage to modular homes occurring on barges or trucks; 3. attention to certain inefficiencies in housing design; 4. supervision of purchase orders for residential furniture; 5. supervision over construction and maintenance of sewer and electrical systems; 6. monitoring of snow removal and road grading equipment; 7. submission of fuel usage reports for the housing area; 8. equipment rental; 9. moving of personal belongings of those who lived *720 in the housing area; and 10. supervision of warehouses in the residential area which were maintained for the express purpose of supporting Alyeska's housing area. Petitioner's residence at the time of his employment with Alyeska was in the city of Valdez. The owner of the residence had built a number of homes on various lots within the city pursuant to an agreement with Alyeska, that Alyeska would lease the premises on a term basis for pipeline employees. The house in which petitioner lived was located on one of two series of blocks upon which other residences stood. The two series of blocks were parallel to each other and each consisted of approximately eight streets of residential housing.The two series of blocks were separated by a strip of park property. Petitioner's duties as engineer were performed almost exclusively at the terminal. Petitioner prepared one report and was on 24-hour call at his residence. Petitioner's residence was located on the northern side of Port Valdez Bay. The terminal was erected on the southern side of the Bay and was a 3-mile distance across the water from petitioner's residence. The automotive route, which necessarily involved roadway *721 driving encircling the Bay, traversed a distance of 12 miles. Petitioner was assigned a company vehicle to transport himself and other pipeline employees to the terminal. Alyeska, in administering its payroll, included the value of petitioner's lodging in petitioner's wages and withheld taxes on the value of the lodging. On his returns for 1976 and 1977 petitioner, after including the value of his Valdez living quarters in gross income, deducted $ 5,360 and $ 6,365 respectively as employee business expenses representing the value of lodging provided by his employer. In his notices of deficiency dated March 30, 1979 and August 14, 1979 respondent disallowed these deductions in their entirety. OPINION Section 119 [4] provides that the value of lodging furnished by an employer to his employee is excludable from the employee's gross income if three conditions are met: (1) the lodging is furnished for the employer's convenience; (2) the employee's acceptance of the lodging is required as a condition of employment, and (3) the lodging is located on the business premises of the employer. Section 1.119-1(b), Income Tax Regs.; Benninghoff v. Commissioner,71 T.C. 216, 218 (1978), *722 affd. 614 F.2d 398 (5th Cir. 1980). Petitioner seeks to exclude from gross income the value of lodging provided in him in Valdez, Alaska by his employer, Alyeska Pipeline Service Company. We have no doubt that such lodging was furnished mainly for the convenience and benefit of Alyeska. This conclusion is supported by our findings which point to the lack of adequate housing in the Valdez area. *723 See Olkjer v. Commissioner,32 T.C. 464, 468 (1959) (employee of government contractor entitled to exclude the value of meals and lodging provided by his employer at a job site in Greenland where the only facilities available were those that the employer provided). Alyeska went to great lengths to erect both permanent type houses and modular homes. In addition it rented all the available motel space in Valdez in order to house its employees. It is thus apparent that adequate housing was a crucial element in Alyeska's campaign to attract competent engineers. It is also evident that the location of the housing, only 12 miles away from the terminal site, served the convenience of the employer. Additionally, we believe that petitioner was required to accept such lodging as a condition of his employment. As noted, housing in Valdez was scarce as were sewer and electrical facilities. Transportation was sometimes inhibited by the accumulation of snow. In its residential areas, Alyeska provided a supervised program of snow removal to facilitate the orderly conduct of business. Thus, it is certain that, by any objective standard, petitioner was required to accept *724 the lodging he was furnished in order to realize the proper performance of his duties and as such it is axiomatic that such acceptance of lodging was a condition of employment. Section 1.119-1(b), Income Tax Reg.; McDonald v. Commissioner,66 T.C. 223, 231 (1976) (even where there is no express requirement that lodging be accepted the condition of employment criterion may be satisfied where an analysis of the facts reveals that as a practical matter the occupancy of the lodging is necessary in order for the employee to properly perform his assigned duties); see Heyward v. Commissioner,36 T.C. 739, 744 (1961), affd. per curiam 301 F.2d 307 (4th Cir. 1962). The parties direct most of their energies to addressing the business premises requirement enunciated in section 119. Respondent argues that whatever the extent of Alyeska's activities north of Port Valdez Bay, petitioner's residence was not on the business premises of Alyeska as petitioner performed almost no work at his residence. Petitioner asserts that the construction of the Trans-Alaska pipeline was such an immense project, that it must be understood as encompassing the entire *725 Valdez region so as to be properly perceived. So viewed, it is argued that the entire city of Valdez was the business premises of Alyeska. "Business premises" within the context of section 119 has been defined as either living quarters that constitute an integral part of the business property or premises on which the company carries on some of its business activities. Benninghoff v. Commissioner,supra, at 220; Dole v. Commissioner,43 T.C. 697 (1965), affd. per curiam 351 F.2d 308 (1st Cir. 1965). The extent or boundaries of the business premises in each case is a factual question whose resolution follows a consideration of the employee's duties as well as the nature of the employer's business. Lindeman v. Commissioner,60 T.C. 609 (1973). Accordingly, the section 119 exclusion is available where lodging is furnished at a place where the employee performs a significant portion of his duties or on the premises where the employer conducts a significant portion of its business. Commissioner v. Anderson,371 F.2d 59 (6th Cir. 1966), revg. 42 T.C. 410 (1964), cert denied 387 U.S. 906 (1967); *726 McDonald v. Commissioner,supra.
We believe that respondent must prevail on this issue. The duties performed by petitioner at his residence consisted of the evolution of one written report. Additionally, he was on 24-hour call. These facts necessitate our finding that petitioner did not perform a significant portion of his duties at his residence. See Benninghoff v. Commissioner,supra, at 216. In fact petitioner readily admits that his main employment duty, the inspection of rotating equipment, was executed at the terminal site. We are thus hardpressed to find that petitioner performed a significant part of his duties at his residence. Petitioner contends that by virtue of the vastness of the pipeline project, the employer's business premises must be understood as encompassing the entire city of Valdez. While we are impressed with petitioner's presentation in support of this assertion, we believe that petitioner's position represents an overly broad view of the term "business premises" as used in section 119. That term involves a consideration of the nature of the employer's business and the place where the employer conducts a significant *727 portion of such business. Commissioner v. Anderson,supra;Lindeman v. Commissioner,supra.Alyeska's business was the construction of a pipeline. The primary situs for the business in the Valdez area was at the pipeline terminal and at docks and yards where necessary construction material was received. While it is clear that the establishment of living quarters throughout the city was a necessary ingredient in Alyeska's search for competent personnel, we view the maintenance of these housing facilities as ancillary to the main business purpose of Alyeska rather than constituting a significant portion of its business. In short, Alyeska's business premises were at the terminal and at material receiving points but not at employees' residences where no significant pipeline business was conducted. Petitioner's sweeping view that the entire city of Valdez constituted Alyeska's business premises is untenable. While there can be no doubt, as petitioner most adequately displays, that the city of Valdez experienced a tremendous economic and population "boom" attributable to pipeline construction, it is a far leap to conclude on the basis of such *728 growth, that the entire city of Valdez constituted the business premises of Alyeska. In Benninghoff v. Commissioner,supra, we held that the value of lodging and utilities furnished to a policeman employed by the Canal Zone government was not excludable from gross income under section 119. The taxpayer was furnished with lodging in the Canal Zone and vigorously contended that the entire Canal Zone was the business premises of the government employer. Our rejection of the taxpayer's claim was premised on the notion that the "business premises" test requires an integral relationship between the lodging and the business activities of the employer and since no significant employer activities occurred at the taxpayer's residence the exclusion sought by the taxpayer was denied.Similarly, in the instant case petitioner performed no significant employer activities at his residence. While certain Alyeska employees were responsible for maintenance and supervision of residential areas, as already noted, Alyeska's housing policy was evolved in order to support and further its main business goal and was not in and of itself a significant business activity. Moreover, *729 there is no evidence in the record that supervisory personnel spent significant portions of time attending to housing supervision nor is there any concrete basis upon which we may find that such supervision, even if significant, was conducted at employee residences.
Petitioner maintains that a narrow interpretation of "business premises" is unwarranted and representative of an obsession with words. He cites Commissioner v. Anderson,supra (dissenting opinion), as authority for his assertion. [5] While we note that petitioner points to the minority view of the Sixth Circuit we stress the following portion of the majority opinion: *730 Examples, of course, can be given where "near" is so nearly equivalent to "on" as to indicate an absurdity in distinguishing between the two. However, this case does not present such as absurdity. Moreover, there is an element of arbitrariness in the drawing of every line. The drawing of not otherwise unreasonable tax lines is a legitimate function of Congress. When Congress drew this line so as to require that the meals be furnished or the lodging be provided "on the business premises of the employer", it is not the proper function of a court to disregard that line and substitute a line of its own choosing. supra at 67. Generally, statutory language providing for exclusions from gross income should be read narrowly so as to prevent abuse. Lindeman v. Commissioner,supra at 614. Undoubtedly the existence of such a rule of construction, on occasion, works to the disadvantage of certain taxpayers. Yet we are constrained to follow that rule to effect its overall purpose. Furthermore, we, as well as the Sixth Circuit, recognize that in the proper instances it is an absurdity to distinguish between the location of the lodging and the business of *731 the employer. In those instances we opt for logic rather than an overly narrow view in reaching the conclusion that the proferred lodging was on the business premises of the employer. It is but a commonsense approach to the application of the rule of a narrow construction. Lindeman v. Commissioner,supra at 614. Such was the case in Giesinger v. Commissioner,66 T.C. 6 (1976) (apartment located in same building where corporate employer operated restaurant and cocktail lounges and provided catering and room services was found to be on business premises of employer) and in Lindeman v. Commissioner,supra (leased lots used for employee and hotel guest parking and for the erection of housing furnished to hotel's general manager were on the business premises of the employer even though the lots were situated across the street from the hotel). However, in the instant case, we simply do not believe that application of a narrow construction yields an illogical result. Petitioner's residence was located within a series of residential streets and we find no absurdity in distinguishing that area from the business premises of *732 Alyeska. Admittedly, Alyeska's establishment of lodging facilities at the terminal was implausible owing to the mountainous terrain. Yet, we are unaware of any method by which we may allow this geographical obstacle to affect our notion of the term business premises. Accordingly, we cannot extend Alyeska's business premises from the terminal site to petitioner's residence at which no significant employee duties were performed and no significant employer business was conducted. To reflect the foregoing and concessions, Decision will be entered under Rule 155. Footnotes
1. This case was consolidated for trial with David E. and Jill L. Sunday, docket No. 7876-79S and William D. and Sandra A. Hubbell, docket No. 16703-79S.↩
2. Petitioners included the value of the lodging in gross income and then deducted an equivalent amount as an employee business expense. The parties have correctly pinpointed the issue as arising under section 119, an exclusion section, and we direct our attention to the applicability of this exclusion. ↩
3. All statutory references are to the Internal Revenue Code of 1954 as amended and in effect for the years in issue.↩
4. SEC. 119. MEALS OR LODGING FURNISHED FOR THE CONVENIENCE OF THE EMPLOYER. There shall be excluded from gross income of an employee the value of any meals or lodging furnished to him by his employer for the convenience of the employer, but only if-- (1) in the case of meals, the meals are furnished on the business premises of the employer, or (2) in the case of lodging, the employee is required to accept such lodging on the business premises of his employer as a condition of his employment. In determining whether meals or lodging are furnished for the convenience of the employer, the provisions of an employment contract or of a State statute fixing terms of employment shall not be determinative of whether the meals or lodging are intended as compensation.↩
5. The Sixth Circuit's majority opinion in Anderson reversed our holding in that case. The taxpayer was a motel manager who was provided with employer-owned lodging two blocks from the motel. We held that such employer-owned lodging which housed an employee who is required to be available on 24-hour call for management of the employer's business is on the business premises of the employer. While Anderson is clearly distinguishable from the case herein, we note that the continued vitality of our decision in that case is questionable. See Dole v. Commissioner,351 F.2d 308 (1st Cir. 1965), affg. 43 T.C. 697 (1965) (on the basis of the concurring opinion of Raum, J.); Lindeman v. Commissioner,60 T.C. 609↩ (1973) (concurring opinion).